Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | REBECCA R. PALLMEYER | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 2002 C 6807 | **DATE** | January 21, 2003 |
| **CASE TITLE** | Shree M. Agrawal (IDOC #K-69770) v. Kenneth R. Briley, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. As plaintiff has paid the filing fee, the clerk shall file the complaint. After initial review the court determines that Plaintiff may proceed with his religious discrimination claim against Defendants Briley and Peterson. All other claims and Defendants are dismissed. The clerk shall issue summons to Defendants Briley and Peterson and the U.S. Marshal is appointed to serve them or obtain waiver of service as provided by Rule 4(d), Fed.R.Civ.P. Defendants shall be served with a copy of the Memorandum Opinion and Order together with the summons and complaint.

(11) ■ For further detail see order attached to the original minute order.

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JAN 22 2003 date docketed | |
| ✓ | Docketing to mail notices. | | | 6 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SHREE M. AGRAWAL,

    Plaintiff,

v.

KENNETH R. BRILEY, CHAPLAIN PETERSON,
GEORGIA SCHOENAUER, CARMEN RUFFIN,
NANCY S. TUCKER, SHEILA M. LOVE,
DONALD N. SNYDER, JR., JOHN DOE,

    Defendants.

No. 02 C 6807

Judge Rebecca R. Pallmeyer

DOCKETED
JAN 2 2 2003

## MEMORANDUM OPINION AND ORDER

Plaintiff Shree M. Agrawal, a prisoner in the custody of the Illinois Department of Corrections (IDOC) at Menard Correctional Center, has filed this pro se civil rights action under 42 U.S.C. § 1983 alleging that Defendant prison officials violated his constitutional rights during his incarceration at Stateville Correctional Center. The Prison Litigation Reform Act, 28 U.S.C. § 1915A, requires the court to review complaints filed by prisoners against governmental officials and dismiss any portion of the complaint that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant immune from such relief. In determining whether the complaint states a claim upon which relief may be granted, the court accepts the allegations of the complaint as true and considers them in the light most favorable to the plaintiff. *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000). Plaintiff asserts three claims, one pertaining to the practice of his religion and two relating to the deprivation of certain items of personal property.

**Plaintiff's First Amendment Claim**

    A.    Facts

Plaintiff is a Vaishnava Hindu whose religious beliefs require that he abstain from meat and eggs as well as food contaminated by contact with them. Plaintiff requires a special diet, since he

will not receive adequate nutrition if he only eats those portions of the normal prison diet that are not religiously forbidden to him.

On January 1, 2001, Plaintiff submitted a written request to the chaplain at Stateville, Defendant Peterson, asking to receive the special diet served to members of the "Hebrew Israelite" faith. This is a vegetarian diet conforming to Plaintiff's religious requirements although it does not include milk products, which Plaintiff's faith permits him to eat. Plaintiff's request was denied. On January 21, 2001, Plaintiff submitted a "Religious Diet Agreement Form," stating that he is a Hindu and requesting the Hebrew Israelite diet, but on January 30, 2001, his request was again refused. Peterson told Plaintiff that he could receive the Hebrew Israelite diet only if he changed his listed religious preference to Hebrew Israelite. Plaintiff filled out the appropriate form, changing his religious preference from "unknown" to "Hindu."

On January 31, 2001, Plaintiff filed a formal grievance. He was told that his grievance was pending before the Religious Review Board, but there was no decision by the Board.[1] On March 17, 2001, Peterson told Plaintiff that "it will be helpful if you can have a representative of [the] Hindu Temple that you came from to write a letter indicating a vegan diet is a requirement of your religious practice." On March 18, 2001, Plaintiff's institutional counselor told him that, "per Chaplain Peterson," Plaintiff was required to obtain a letter from his "church, mosque or clergy from a Hindu Temple" stating that he is a practicing Hindu and that a vegetarian diet is required. Peterson never informed Plaintiff how to contact a Hindu priest to obtain such a letter. No such verification was required of those claiming to be of the "Hebrew Israelite" faith.

Nine months after it was filed, Plaintiff's grievance was denied on September 20, 2001, by a grievance officer at Stateville, Defendant Carmen Ruffin, and the denial was approved the next

---

[1] IDOC regulations provide for a multi-denominational Religious Practice Advisory Board comprised of legal, administrative, and chaplaincy staff to make recommendations regarding, among other things, prisoners' requests for religious diets. 20 Ill. Admin. Code § 425.40.

2

day by Stateville's warden, Defendant Kenneth Briley. On February 25, 2002, Plaintiff's final appeal was rejected by Defendant Nancy S. Tucker on behalf of the IDOC Administrative Review Board (ARB) with the concurrence of the Director of IDOC, Defendant Donald N. Snyder, Jr.

### B. Plaintiff's First Amendment Claim Against Defendants Peterson and Briley

A prisoner retains his or her First Amendment right to practice his religion, subject to prison regulations that do not discriminate between religions and are reasonably related to legitimate penological objectives. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987); *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Sasnett v. Litscher*, 197 F.3d 290, 292 (7th Cir. 1999).[2] It is settled that observance of religiously mandated dietary restrictions is a form of religious practice protected by the First Amendment. *Hunafa v. Murphy*, 907 F.2d 46, 47 (7th Cir. 1990)(citing cases).

IDOC's handling of inmates' requests for special diets for religious reasons is addressed by 20 Ill. Admin. Code § 425.70:

> A committed person may submit a written request to the facility chaplain to receive an alternative diet for specific religious reasons. The request must contain written verification that the committed person is a member of a faith group that requires adherence to a particular diet and the specific requirements of the diet. Eligibility to receive an alternative diet for specific religious reasons shall be determined by the facility chaplain who shall ordinarily confer with a religious leader or faith representative of the faith group at issue. The facility chaplain and the religious leader or faith representative may interview the committed person.

This regulation does not expressly require that a recognized clergy member provide the "written

---

[2] Going beyond the requirements of the First Amendment, the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1 *et seq.* (RLUIPA), declares that institutions receiving federal financial assistance may not "impose a substantial burden on the religious exercise" of an institutionalized person unless it is the "least restrictive means" of furthering "a compelling governmental interest." 42 U.S.C. § 2000cc-1(a). RLUIPA provides that "a person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a). Plaintiff is no longer at Stateville, and it is unclear whether this provision of RLUIPA authorizes a claim for damages as well as injunctive relief. To the court's knowledge, no court has so held, although Judge Crabb's recent opinion in *Charles v. Verhagan*, 220 F.Supp.2d 937, 953-54 (W.D. Wis. 2002), finding the defendants had qualified immunity from monetary damages, implies that damages are available. Because the court concludes that Plaintiff has stated a claim under the First Amendment without the benefit of RLUIPA, it is unnecessary to address the question at this stage.

verification" of an inmate's membership in a "faith group" and the requirements of that faith. One can imagine various ways in which these matters could be verified, including by a plausible affidavit provided by the inmate himself. Nevertheless, it was apparently so interpreted by Chaplain Peterson, and when Plaintiff did not present the requested proof, his request was denied. Such a reading of the regulation could well run afoul of the First Amendment, whose protections are not limited to members of established denominations, *Frazee v. Illinois Dep't of Employment Security*, 489 U.S. 829, 834 (1989), or, for that matter, to members of religious groups having clergy. *See, e.g., Love v. Reed*, 216 F.3d 682 (8th Cir. 2000)(inmate's idiosyncratic sabbath observance, based on personal interpretations of Old Testament passages, entitled to First Amendment protection). Although input from a member of the clergy may be useful in assessing the sincerity of an inmate's beliefs, the state may not rely on a clergy person's determination as to whether an inmate is a member of a "faith group," entitling him to First Amendment recognition of religious practices associated with that group. *See Jackson v. Mann*, 196 F.3d 316 (2d Cir. 1999)(plaintiff, who considered himself Jewish, was entitled to receive kosher diet even though prison chaplain, a rabbi, found that plaintiff had not shown that he was a Jew under Jewish religious law). Nor would a clergy person's interpretation of a faith group's religious requirements be dispositive. An individual's understanding of the demands of his or her religion is entitled to First Amendment protection, even if that understanding is not shared by others professing the same religion. *Thomas v. Review Bd. of Indiana Employment Security Division*, 450 U.S. 707 (1981).

In any event, even if the verification requirement were constitutional in the context of prison administration, its alleged inconsistent application is not. If other inmates are entitled to declare themselves to be "Hebrew Israelites" and receive a vegetarian diet without further verification, Plaintiff should have been able to declare his Vaishnavite affiliation and receive the same treatment:

In providing [inmates a reasonable opportunity to practice their religion] the efforts

4

of prison administrators, when assessed in their totality, must be evenhanded.
Prisons cannot discriminate against a particular religion. [Citations] The rights of
inmates belonging to minority or non-traditional religions must be respected to the
same degree as the rights of those belonging to larger and more traditional
denominations.

*Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991).³ Taking plaintiff's allegations as true, Defendants' refusal to allow plaintiff the diet given to the "Hebrew Israelites" appears to have been unreasonable and discriminatory. Plaintiff has stated a claim under the First Amendment.

### C. Plaintiff's First Amendment Claim Against Defendants Ruffin, Tucker and Snyder

Plaintiff may proceed, however, only against Chaplain Peterson and Warden Briley, the officials who actually made the decision to deny plaintiff a vegetarian diet. Defendant Ruffin, the grievance officer, merely recommended to Briley that plaintiff's grievance be denied. There is no constitutional right to a grievance procedure, *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996), so her recommendation that the grievance be denied was not a new constitutional violation. The same is true of Defendant Tucker, who recommended to Defendant IDOC Director Donald Snyder on behalf of the ARB that the denial be upheld. While Snyder himself presumably had the power to reverse Briley's decision, and so can be said to be responsible for the continuing infringement of Plaintiff's rights, the Court of Appeals has held that the director of a state correctional agency is not personally responsible for any constitutional violation within the prison system solely because the grievance procedure made him aware of it and he failed to intervene. *Crowder v. Lash*, 687 F.2d 996, 1006 (7th Cir. 1982). These Defendants are accordingly dismissed.

### D. Injunctive Relief

---

³ The court notes that while Vaishnava Hinduism is little-known in this country, it is not an obscure or novel sect. Vaishnava (the worship of Vishnu as the prime deity) is a major religion in India, and information concerning its beliefs and practices is readily available in libraries and on the Internet. See, e.g., http//www.vaishnava.com.

Plaintiff seeks an injunction that will protect his rights at IDOC institutions other than Stateville. Defendant Snyder would be a proper party to such an injunction. Nevertheless, he will not be retained as a party for this purpose. Plaintiff alleges that he was transferred to Menard Correctional Center on January 25, 2002. He does not allege that his dietary needs have not been met at Menard. No system-wide policy is alleged, and it appears from the IDOC regulation quoted above that requests for religious diets are considered on a case-by-case basis by the warden and institutional chaplain.

A plaintiff seeking an injunction "must show a significant likelihood and immediacy of sustaining some direct injury." *Sierakowski v. Ryan*, 223 F.3d 440, 443 (7th Cir. 2000)(citing *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)). In *Stewart v. McGinnis,* 5 F.3d 1031 (7th Cir. 1993), the plaintiff claimed his property had been confiscated during cell "shakedowns" at Stateville. Although no longer at Stateville, he sought injunctive relief against IDOC, claiming that IDOC procedures governing shakedowns were neither adequate nor followed. The Court of Appeals affirmed the grant of summary judgment for the defendants, finding that plaintiff's conclusory assertion of a substantial likelihood of future harm was not enough to confer standing to seek an injunction against IDOC. Here, the bare possibility that the warden of another IDOC institution will refuse to accommodate Plaintiff's religious dietary restrictions is similarly speculative, and does not warrant retaining Snyder as a Defendant.[4]

### E. Official Capacity Claims

Snyder must be dismissed for the additional reason that Plaintiff has sued Snyder solely

---

[4] In *Goodman v. Carter*, No. 2000 C 948, 2001 WL 755137 (N.D.Ill. 2001), a suit brought by an adherent of Wicca seeking, among other things, a vegetarian diet, Judge Lindberg declined to dismiss plaintiff's official-capacity claims for injunctive relief, stating that the plaintiff should be able to obtain an injunction binding on the state, rather than only IDOC personnel at Stateville, so that he would not have to bring a fresh action to establish his rights against a different warden in the event he were transferred to another institution. Here, however, Plaintiff has already been transferred without encountering the same difficulties, arguing against the need for a system-wide injunction.

in his official capacity. A suit against a state official in his official capacity is effectively a suit against the state. *Kentucky v. Graham,* 473 U.S. 159, 165 (1985). A state is not a "person" subject to suit under 42 U.S.C. § 1983. *Arizonans for Official English v. Arizona,* 520 U.S. 43, 68-69 (1997); *Power v. Summers,* 226 F.3d 815, 8181 (7th Cir. 2000), and the Eleventh Amendment generally bars suits in federal court against state officials in their official capacities when the state is the real party in interest. *Sonnleitner v. York,* 304 F.3d 704, 717 (7th Cir. 2002). There is an exception to that rule where a state official is sued in his or her official capacity to enjoin the official's prospective violation of federal law, *id.* at 717-18; *Ameritech Corp. v. McCann,* 297 F.3d 582, 586-87 (7th Cir. 2002), but, as stated above, injunctive relief would be inappropriate here. Even if the court were to construe Plaintiff's claim as brought against Snyder in his individual capacity, such a claim would be dismissed for the reasons set forth above. All official-capacity claims against other Defendants are dismissed as well.

**Plaintiff's Property Claims**

### A. Calculator

Plaintiff alleges that between August 23 and October 30, 2001, he unsuccessfully sought to buy a graphic calculator from the commissary that he alleges other inmates were permitted to purchase. On October 30, 2001, Plaintiff filed a grievance complaining of this disparate treatment. His counselor, Louis Briick, who is not named as a Defendant, falsely told him the calculator was not yet available. At the next level, Defendant Ruffin recommended denial of Plaintiff's grievance, stating that "the graphic calculators have computer hookup availability and will no longer be sold," and that "the list of items sold by commissary is generated by the Director's office and is outside the jurisdiction of this facility." Plaintiff asserts that the second statement was false. Defendant Briley concurred in the denial of the grievance, and Plaintiff appealed to the ARB, stating that the graphic calculator sold to other inmates also had computer hookup availability, and that he was

willing to purchase the same or a similar calculator that had been modified to disable the computer interface. Defendant Sheila M. Love, writing for the ARB, with Defendant Snyder's approval, denied Plaintiff's appeal. Plaintiff alleges that Defendants have thereby deprived him of the "opportunity and joy of learning calculator programming and finding solutions for some complex mathematical problems." Complaint ¶ 17.

It goes without saying that Plaintiff has no constitutional right to purchase or possess a calculator; any claim must be based on disparate treatment. Plaintiff does not allege that the refusal to sell him the calculator was a result of racial or other class-based discrimination. It is possible, under certain circumstances, to state a claim under the Equal Protection clause as a "class of one," where plaintiff alleges that he has been intentionally treated differently from others similarly situated without any rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001). Even if Plaintiff could state a claim under this theory, however, he has sued the wrong Defendants. Plaintiff does not deny the truth of Ruffin's statement that "the graphic calculators have computer hookup availability and will no longer be sold." The court infers that by the time Plaintiff's grievance reached Ruffin (and after her, Defendants Briley, Love and Snyder) the calculator was equally unavailable to all prisoners, perhaps in the aftermath of the terrorist attacks of September 11, 2001. Defendants had no obligation to permit Plaintiff to buy an article not available to other inmates or to make arrangements for him to purchase a calculator having the computer interface specially disabled. This claim is accordingly dismissed.

### B. Electric shaver

Plaintiff alleges that he had purchased a Norelco shaver with trimmer from the Stateville commissary. On December 10, 2001, while Plaintiff was detained in segregation he received a "notice for disposal" of his shaver issued by unknown-named Defendant "John Doe." Plaintiff does

not allege the stated reason for this "notice for disposal," but the court infers that inmates were no longer permitted to have shavers with trimmers.[5] On December 11, Plaintiff sent a written response to the notice asking that the "razorhead" be returned to him and the rest of the shaver be destroyed. Plaintiff explains that he did not remove the trimmer himself because IDOC regulations forbid inmates to modify items purchased from the commissary. On December 20, 2001, an officer in the personal property office advised Plaintiff that his response was not yet in their file. Plaintiff never received a response to his request, nor did he receive the razorhead from his shaver.

On December 26, 2001, Plaintiff ordered a new shaver from the Stateville commissary. Plaintiff received the new shaver on February 22, 2002, after his transfer to Menard. Plaintiff discovered that the new shaver was identical to the old one except that the trimmer had been removed. Thus, because the trimmer could have been removed from his old shaver, he had been compelled to buy a new one unnecessarily.

Having not yet heard a response to his original request, Plaintiff filed a written grievance on February 14, 2002. His correctional counselor responded on March 12, 2002, stating that his grievance could not be resolved at Menard since it involved property confiscated at Stateville. On March 14, 2002, Plaintiff sent a written inquiry to his counselor asking what he needed to do to proceed with his grievance. After receiving no response, Plaintiff finally filed an appeal with the ARB on June 16, 2002, which was rejected as untimely.

Plaintiff alleges that at the time his shaver was confiscated, other inmates had been allowed to keep their shavers with trimmers. The razorhead to his old shaver had value (razorheads are

---

[5] IDOC regulations provide that when unauthorized or excess property is confiscated, an inmate is given 30 days in which to request that the property be destroyed, that it be made available for pickup at the institution, or that it be shipped out of the institution at the inmate's expense. If the inmate notifies officials in writing that he has filed a grievance concerning the confiscation, the property is to be held pending resolution of the grievance. 20 Ill. Admin. Code § 501.230.

sold separately at the commissary), and could have been removed in less than a minute. Because he was deprived of a shaver for a time, Plaintiff had to let his beard grow, subjecting him to ridicule, and when he was finally able to shave it off he had to pay for a new ID photograph.

Plaintiff has no equal protection claim, because nothing in the complaint suggests that "John Doe" intentionally singled out Plaintiff for disparate treatment, whether because of Plaintiff's race, religion, or even his individual personal characteristics. See Schroeder v. Hamilton School District, 282 F.3d 946, 951 (7th Cir. 2002), cert. denied, 123 S.Ct. 435, 71 USLW 3155 (Oct. 21, 2002). Simply put, the failure of "John Doe" to do something not provided for in the regulations—to return a part of the shaver to Plaintiff—does not indicate the kind of discriminatory animus that would support an equal protection claim.

Plaintiff's claim for the deprivation of his property as such—"John Doe's" failure to return the razorhead as requested—does not state a federal constitutional claim. Although state officials may not deprive prisoners of property without due process of law, Plaintiff may not sue "John Doe" in federal court under § 1983 because Plaintiff has an adequate state remedy in the Illinois Court of Claims. Murdock v. Washington, 193 F.3d 510, 512-13 (7th Cir. 1999); Stewart, 5 F.3d at 1036.

## CONCLUSION

Plaintiff's First Amendment claim against Defendants Peterson and Briley shall proceed. All other claims and Defendants are dismissed with prejudice, except that Plaintiff's claim with respect to the disposal of his electric shaver is dismissed without prejudice to any remedy he may have in the Illinois state courts.

ENTER:

Dated: January 21, 2003

REBECCA R. PALLMEYER
United States District Judge

10