# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

SHREE M. AGRAWAL, )
)
Plaintiff, )
) No. 02 C 6807
v. )
) Judge Rebecca R. Pallmeyer
KENNETH R. BRILEY, CHAPLAIN PETERSON, )
ANTHONY DAVIS, )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

On September 23, 2002, Plaintiff Shree M. Agrawal, a prisoner in the custody of the Illinois Department of Corrections ("IDOC") at Menard Correctional Center, filed suit against several IDOC officials, alleging that he was denied his First Amendment right to practice his religion (Vaishnava Hindu) while confined at Stateville Correctional Center ("Stateville"). Specifically, Agrawal asserted that IDOC officials had refused to provide him with a diet free of meat and eggs, even though a vegetarian diet conforming to Plaintiff's religious restrictions was available to Stateville inmates of the "Hebrew Israelite" faith.[1] After the court dismissed his complaint in part, *see Agrawal v. Briley*, No. 02 C 6807, 2003 WL 164225, at *4 (N.D. Ill. Jan. 22, 2003), Plaintiff amended his complaint to add a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, based on the same facts; Plaintiff sought injunctive relief, a declaratory judgment, and both actual and punitive damages. The court denied a motion filed by Defendants Kenneth Briley, the Stateville warden, and Stateville's prison chaplain, Charles Peterson, to dismiss the amended complaint, *Agrawal v. Briley*, No. 02 C 6807, 2003 WL 22839813 (N.D. Ill. Nov. 25, 2003), and then on August 25, 2004 granted Plaintiff's motion for summary judgment as to Defendants'

---

[1]     The court has set forth a more extensive factual background in its previous rulings in this matter, and herein attempts to provide only those facts relevant to the present issue.

liability on the RLUIPA claim.[2]  *Agrawal v. Briley*, No. 02 C 6807, 2004 WL 1977581, at *15 (N.D. Ill. Aug. 25, 2004).

The parties have now briefed the question of the relief to which Plaintiff Agrawal is entitled under RLUIPA.  For the reasons discussed below, the court concludes that RLUIPA authorizes claims for monetary damages, but that compensatory damages are unavailable to the extent those damages are based, as here, on claims of mental or emotional injury.  Accordingly, absent a showing of physical injury, only nominal and punitive damages are available to Agrawal under RLUIPA.

**DISCUSSION**

**I.      RLUIPA**

RLUIPA, enacted in 2000, is the latest of several "congressional efforts to accord religious exercise heightened protection from government-imposed burdens."  *Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005).  Ten years before RLUIPA's enactment, the Supreme Court held, in *Employment Division v. Smith*, 494 U.S. 872, 878-82 (1990), that the Free Exercise Clause of the First Amendment does not prohibit the applications of neutral, generally applicable laws that incidently burden religious conduct.  *See Cutter*, 544 U.S. at 714.  In so doing, the *Smith* Court declined to hold such generally applicable regulations to the so-called *Sherbert* test, under which a court must determine whether a statutory or regulatory prohibition "substantially burdened a religious practice," and, if so, whether that burden was "justified by a compelling government interest."  *City of Boerne*

---

[2]      Plaintiff also brought Equal Protection claims against IDOC officials related to confiscation of an electric razor and his inability to buy a graphic calculator at the Stateville commissary.  The court dismissed both claims in its initial ruling.  *Agrawal*, 2003 WL 164225, at *5-6.  In his Second Amended Complaint, Plaintiff re-pleaded those claims against Defendant Briley and added as a defendant Stateville Personal Property Officer Anthony Davis.  Because the court dismissed Plaintiff's personal property claims against Defendant Briley with prejudice, Plaintiff's Equal Protection claims lie only against Defendant Davis.

The court did not, in its ruling granting summary judgment for Plaintiff on his RLUIPA claim, address Plaintiff's First Amendment claims against Defendants Briley and Peterson.

*v. Flores*, 521 U.S. 507, 513 (1997).  In response to *Smith*, Congress, relying on its remedial powers under § 5 of the Fourteenth Amendment, enacted the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb, for the express purpose of restoring the *Sherbert* compelling-interest test.  *Id.* at 515, 517-18; *see* 42 U.S.C. § 2000bb(b)(1).  Under RFRA, "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability," unless the government can demonstrate that the application of the burden "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000bb-1(a), (b); *City of Boerne*, 521 U.S. at 515-16.  In *City of Boerne*, however, the Court "invalidated RFRA as applied to States and their subdivisions," holding that Congress had exceeded its Fourteenth Amendment remedial powers and thus lacked the constitutional authority to enforce RFRA against state and local governments.  *Cutter*, 544 U.S. at 715 (citing *City of Boerne*, 521 U.S. at 532-36); *see O'Bryan v. Bureau of Prisons*, 349 F.3d 399, 401 (7th Cir. 2003).  RFRA remains enforceable against the federal government, officers, and agencies.  *O'Bryan*, 349 F.3d at 401.

Congress responded by enacting RLUIPA.  Although the language of its substantive and remedial provisions is virtually identical to that in RFRA, *see Hankins v. Lyght*, 441 F.3d 96, 111 n.3 (2d Cir. 2006), RLUIPA was enacted pursuant to Congress's powers under the Spending and Commerce Clauses rather than § 5 of the Fourteenth Amendment, and affords heightened protection to religious exercise in only two contexts: institutionalized persons and land use regulation.  *Cutter*, 544 U.S. at 715; *see* 42 U.S.C. §§ 2000cc, 2000cc-1.  As to institutionalized persons, RLUIPA prohibits any "government" from "'impos[ing] a substantial burden on the religious exercise of a person residing in or confined to an institution,' unless the government shows that the burden furthers 'a compelling governmental interest' and does so by 'the least restrictive means.'"  *Cutter*, 544 U.S. at 715 (quoting 42 U.S.C. § 2000cc-1(a)).  "Government" is defined quite broadly as including "(I) a State, county, municipality, or other governmental entity created under the

3

authority of a State; (ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (I); and (iii) any other person acting under color of State law." 42 U.S.C. § 2000cc-5(4)(A). And, as RFRA did, RLUIPA provides a private right of action: "A person may assert a violation of this Act as a claim or defense in a judicial proceeding and obtain appropriate relief against a government."[3] 42 U.S.C. § 2000cc-2(a).

RLUIPA's provisions relating to institutionalized persons apply only to "program[s] or activit[ies]" receiving federal financial assistance or affecting interstate commerce. 42 U.S.C. § 2000cc-1(b)(1)-(2); *Cutter*, 544 U.S. at 715-16. In *Cutter*, the Supreme Court held that RLUIPA's institutionalized-persons provisions withstood an Establishment Clause challenge, 544 U.S. at 720, but declined to address whether Congress had exceeded its powers under the Spending and Commerce Clauses because that issue had not been raised in the Court of Appeals below. *Id.* at 718 n.7. The Seventh Circuit, however, has found RLUIPA to be a valid exercise of Congressional authority under the Spending Clause. *See Charles v. Verhagen*, 348 F.3d 601, 611 (7th Cir. 2003).

## II. Availability of Monetary Damages Under RLUIPA

At issue in this case is whether RLUIPA authorizes monetary damages. As noted, RLUIPA enables a prevailing plaintiff to "obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a). No Circuit Court of Appeals has addressed whether "appropriate relief" includes damages, and district courts are divided on the issue. At least one court has held that this statutory language does not authorize suits for damages against state officials in their individual capacities.[4]

---

[3]     RFRA provides that "[a] person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000bb-1(c).

[4]     The distinction between "individual" and "official" capacities is derived from § 1983 jurisprudence. Suits against state officials in their official capacities are treated as suits against the state itself; section 1983 suits against officials in their "personal" or "individual" capacities seek to impose personal liability for actions taken under color of state law. *Kentucky v. Graham*, 473 U.S. 159, 165 & n.10 (1985). Consequently, a state official sued for damages in his or her official (continued...)

In *Boles v. Neet*, 402 F. Supp. 2d 1237, 1240 (D. Colo. 2005), the court stated that RLUIPA "permit[s] cases against a governmental entity, but not against an individual officer, except perhaps in his or her official capacity." The court further noted, without explanation, that RLUIPA "does not appear [to] permit[] a claim for damages." *Id.* at 1241. The court thus concluded that RLUIPA allowed claims only for injunctive and/or declaratory relief against state governmental entities or officials sued in their official capacities, and held that the plaintiff inmate's claims were barred to the extent he sought damages. *Id.*; *cf. Guru Nanak Sikh Society of Yuba City v. Sutter*, 326 F. Supp. 2d 1128, 1136 (E.D. Cal. 2003) (allowing RLUIPA land use claims for injunctive relief to go forward against individual defendants in their official capacities).

Several other courts have, without explicitly so holding, expressed grave doubt as to whether RLUIPA permits claims for damages against individual defendants. In *Morris-El v. Menei*, No. Civ.A. 00-200J, 2006 WL 1455592, at *3 (W.D. Pa. May 22, 2006), the court had previously denied the plaintiff inmate's attempt to amend his complaint to add a RLUIPA claim to his First Amendment claim because the complained-of events pre-dated RLUIPA's enactment. In granting summary judgment in favor of defendant prison officials' First Amendment claims, the court observed that RLUIPA did not authorize damages against individual defendants in any event, but

---

[4](...continued)
capacity can assert defenses available to the state, such as Eleventh Amendment sovereign immunity. *Id.* at 166. The Eleventh Amendment is no bar when an official is sued in his or her individual capacity. *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991). The distinction turns on "the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury." *Id.* at 26. In other words, "the dispositive inquiry is 'who will pay the judgment?'" *Stafford v. Briggs*, 444 U.S. 527, 542 n.10 (1980) (quoting *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949)). Where damages will be paid by the individual defendant rather than the state treasury, the state official is sued in his or her individual capacity, regardless of whether the state chooses to indemnify the official. *See Luder v. Endicott*, 253 F.3d 1020, 1023 (7th Cir. 2001); *see also Alden v. Maine*, 527 U.S. 706, 757 (1999) ("a suit for money damages may be prosecuted against a state officer in his individual capacity for unconstitutional or wrongful conduct fairly attributable to the officer himself, so long as the relief is sought not from the state treasury but from the officer personally."). Where it is unclear at the outset which capacity applies, "'[t]he course of proceedings' typically will indicate the nature of the liability sought to be imposed." *Graham*, 473 U.S. at 167 n.14 (1985) (quoting *Brandon v. Holt*, 469 U.S. 464, 469 (1985)).

only "'appropriate relief against a government'"; accordingly, only injunctive relief would have been "appropriate" under RLUIPA, and that was mooted by the inmate's transfer. *Id.* (quoting 42 U.S.C. § 2000cc-2a). In *Gooden v. Crain*, 405 F. Supp. 2d 714, 723 (E.D. Tex. 2005) (quoting 42 U.S.C. § 2000cc-2a), the court, addressing whether defendant prison officials were entitled to qualified immunity on an inmate's RLUIPA claim, observed that "RLUIPA does not contemplate recovering damages from individuals . . . .Instead, RLUIPA provides for 'appropriate relief against a government.'" The court concluded that qualified immunity was thus "irrelevant to the extent damages may be unavailable" under RLUIPA, but that to the extent damages were "potentially available," defendants were entitled to qualified immunity in any event because plaintiff had not established a substantive RLUIPA violation. *Id.* at 724. Similarly, in *Smith v. Haley*, 401 F. Supp. 2d 1240, 1246 (M.D. Ala. 2005), the court noted that a threshold issue in determining whether defendant prison officials were entitled to qualified immunity on an inmate's RLUIPA claim was whether RLUIPA even authorized claims for damages against state officials in their individual capacities. The court observed that "[b]ecause there is simply nothing in the statute that clearly suggests that government employees can be liable for damages in their individual capacities, the court doubts that RLUIPA provides for such." *Id.* As the parties had not briefed the issue, however, the court assumed that such damages were available and proceeded to find the defendants entitled to qualified immunity. *Id.* at 1246, 1250; *see also Farrow v. Stanley*, No. Civ.02-567-PB, 2005 WL 2671541, at *11 n.13 (D.N.H. Oct. 20, 2005) (noting "substantial uncertainty . . . as to whether [RLUIPA] even provides a right to money damages" but explicitly declining to address the issue because the parties had not briefed it).

Although the *Haley* court suggested that RLUIPA might authorize damages claims against state officials in their official, rather than individual capacities, *see id.* at 1246, other courts have found such claims barred by Eleventh Amendment sovereign immunity. *See, e.g., James v. Price*, No. 2:03-CV-0209, 2005 WL 483443, *2 (N.D. Tex. Mar. 2, 2005) ("To the extent plaintiff is suing

the defendants for monetary relief, the suit against the defendants in their official capacities is barred by the Eleventh Amendment."); *Limbaugh v. Thompson*, Nos. 2:93cv1404-WHA, 2:96cv554-WHA, 2006 WL 2642388, at *6 (M.D. Ala. Sept. 14, 2006) ("to the extent the plaintiffs seek monetary relief against . . . the individual defendants in their official capacities, the plaintiffs' claims are barred by the Eleventh Amendment and are subject to dismissal."); *cf. Williams v. Bitner*, 285 F. Supp. 2d 593, 602 (M.D. Pa. 2003) (holding that RLUIPA "does not unconstitutionally abrogate the immunity granted by the Eleventh Amendment" because sovereign immunity does not bar actions for injunctive relief against state officials and RLUIPA "does not mandate the award of damages").

Courts coming down on the other side of the issue have held that RLUIPA does authorize individual-capacity suits and that "appropriate relief" indeed includes money damages. *See, e.g., Marsh v. Granholm*, NO. 2:05-cv-134, 2006 WL 2439760, at *10-11, 14 (W.D. Mich. Aug. 22, 2006) (rejecting defendants' argument that they could not be held liable for damages under RLUIPA in their individual capacities, but ultimately concluding that qualified immunity shielded defendants from liability); *Daker v. Ferrero*, No. 03-CV-02481-RWS, 2006 WL 346440, at *9 (N.D. Ga. Feb. 13, 2006) (holding that RLUIPA permits individual-capacity suits because its definition of "government" includes individuals who would be subject to liability under § 1983, and that RLUIPA's "appropriate relief" provision did not explicitly preclude money damages); *Orafan v. Goord*, No. 00CV2022(LEK/RFT), 2003 WL 21972735, at *9 (N.D.N.Y. Aug. 11, 2003) (holding that because the "plain language of the statute" includes individuals in its definition of "government," RLUIPA "[c]learly . . . contemplates individual liability"). Several of these courts and others, however, have observed that recovery of compensatory damages may be limited by § 1997e(e) of the Prison Litigation Reform Act ("PLRA"), which bars claims brought by prisoners for "mental or emotional injury." *See* 42 U.S.C. § 1997e(e); *see, e.g., Andreola v. State of Wisconsin*, No. 04-C-0282, 2006 WL 2038364, at *3 (E.D. Wis. July 19, 2006) (concluding that even if RLUIPA authorizes damages,

7

compensatory damages are barred by the PLRA); *Daker*, 2006 WL 346440, at *10 (claims for compensatory and punitive damages barred by § 1997e(e) to the extent those claims were predicated on mental or emotional injury); *Meyer v. Teslik*, 411 F. Supp. 2d 983, 991 (W.D. Wis. 2006) (compensatory damages barred by § 1997e(e), but nominal and punitive damages available for plaintiff's RLUIPA claim).

Still other courts have cited the lack of case law and the uncertainty of the issue as reasons for holding that damages are unavailable. *See, e.g., Smith v. Beauclair*, No. CV-03-222-C-EJL, 2006 WL 2348073, at *10 (D. Idaho Aug. 11, 2006) (denying plaintiffs' request for compensatory damages "[b]ased on the lack of case law on this point"); *Hammons v. Jones*, No. 00-CV-0143-CVE-SAJ, 2006 WL 353448, at *1 (N.D. Okla. Feb. 14, 2006) (limiting plaintiff to injunctive relief on his RLUIPA claim upon remand from the Tenth Circuit in part because other courts had "determined that claims for damages are precluded or uncertain"). Others have assumed, without deciding, that damages are available under RLUIPA. *See Figel v. Overton*, No. 2:03-CV-216, 2006 WL 625862, at *2 (W.D. Mich. Mar. 9, 2006) (granting summary judgment in favor of defendant prison officials on plaintiff's claims for injunctive and declaratory relief because changes in the challenged prison policy rendered those claims moot, but declining to grant summary judgment on plaintiff's damages claims under RLUIPA and § 1983, without discussing whether RLUIPA authorized such relief); *Shidler v. Moore*, 409 F. Supp. 2d 1060, 1067 (N.D. Ind. 2006) (noting that it was "unclear" to what extent § 1997e(e) of the PLRA precluded monetary damages under RLUIPA, but "giving [plaintiff] the benefit of the doubt at the pleading stage" and holding that plaintiff had stated a claim for money damages under RLUIPA).

In this case, Plaintiff argues that nominal, compensatory, and punitive damages are all available under RLUIPA because § 2000cc-2(a), authorizing "appropriate relief," contains "no express limitation" on the type of relief a court can award. (Plaintiff's Brief Concerning the Availability of Damages under RLUIPA, at 2-3.) Plaintiff also claims to be "aware of no legal

authority rejecting the proposition that nominal, compensatory, and punitive damages are all 'appropriate relief.'"[5] (Plaintiff's Supplemental Authority on the Availability of Damages Under RLUIPA, at 1.) Defendants contend that § 2000cc-2(a) "in no way expressly authorizes an award of monetary damages." (Defendants' Brief in Response to Plaintiff's Brief Concerning the Availability of Damages under RLUIPA (hereinafter, "Def.'s Resp."), at 3-4.) Defendants maintain that monetary damages are barred by sovereign immunity, (Defendants' Sur-Reply, at 1-2), and that even if the court were to conclude that RLUIPA authorizes claims for damages, compensatory damages would be precluded by the PLRA and punitive damages would be inappropriate in this case. (Defendants' Supplemental Brief Concerning the Availability of Damages Under RLUIPA (hereinafter, "Def.'s Supp."), at 2-3.) Defendants further urge the court to reconsider its earlier conclusion that Defendants are not entitled to qualified immunity. (*Id.* at 11-12.) Both parties cite to several of the above-noted district court decisions in support of their arguments.

The court addresses the issues raised by the parties in the following order: first, the application of sovereign immunity in the RLUIPA context; second, whether RLUIPA authorizes individual-capacity suits for damages; third, if damages are indeed available, whether the PLRA imposes any limitations on recovery; and fourth, whether the court should revisit its qualified immunity determination.

## A. Sovereign Immunity

Defendants contend that Plaintiff is not entitled to money damages under RLUIPA because Illinois has not waived its sovereign immunity. (Defendants' Sur-Reply, at 2.) Plaintiff responds that

---

[5]    As of August 11, 2006, the date Plaintiff's brief was filed, several district court decisions, as noted above, had concluded that money damages were altogether unavailable under RLUIPA against individual defendants. *See, e.g., Morris-El*, 2006 WL 1455592, at *3; *Gooden*, 405 F. Supp. 2d at 723; *Boles*, 402 F. Supp. 2d at 1240. Others had found compensatory damages barred by the PLRA. *See, e.g., Andreola*, 2006 WL 2038364, at *3; *Daker*, 2006 WL 346440, at *10; *Meyer*, 411 F. Supp. 2d at 991. The court presumes that Plaintiff intended the phrase "no *controlling* legal authority."

because Defendants have been sued and held liable only in their individual capacities, "there is no conceivable 11th Amendment issue." (Plaintiff's Sur-Response, at 2.) Plaintiff is correct that sovereign immunity is no bar where a state official is sued in his or her individual capacity. *See Ameritech Corp. v. McCann*, 297 F.3d 582, 586 (7th Cir. 2002). Plaintiff is assuming that RLUIPA allows individual-capacity suits, but, as discussed below, that issue is disputed. *See Boles*, 402 F. Supp. 2d at 1240 (holding that RLUIPA does not authorize suits against individual defendants). Moreover, in this court's earlier decision granting summary judgment in favor of Plaintiff on his RLUIPA claim, the court did not indicate whether Defendants were liable in their official or individual capacities. *See Agrawal*, 2004 WL 1977581, at *13-14. Indeed, although the court had previously dismissed Plaintiff's official-capacity § 1983 claims, *see Agrawal*, 2003 WL 164225, at *4, the court, in addressing Plaintiff's RLUIPA claim, explicitly observed that Defendant Briley's liability under RLUIPA did not parallel his liability under § 1983. *Agrawal*, 2004 WL 1977581, at *13. The court thus, as an initial matter, addresses whether a RLUIPA claim against a defendant in his or her official capacity is barred by sovereign immunity.

Because a suit against a state official in his or her official capacity is "no different from a suit against the State itself," *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), state officials in their official capacities are generally immune from suit under the Eleventh Amendment. *Joseph v. Bd. of Regents of Univ. of Wisconsin Sys.*, 432 F.3d 746, 748 (7th Cir. 2005). This immunity is, however, subject to three exceptions. *MCI Telecommunications Corp. v. Illinois Commerce Com'n*, 183 F.3d 558, 563 (7th Cir. 1999). First, under the so-called *Ex Parte Young* exception, state officials can be sued in their official capacities for prospective injunctive relief. *Bruggeman ex rel. Bruggeman v. Blagojevich*, 324 F.3d 906, 912 (7th Cir. 2003) (citing *Ex Parte Young*, 209 U.S. 123, 159-60 (1908)). Second, Congress may abrogate state immunity by statute "if it makes its intention to abrogate unmistakably clear in the language of the statute and acts pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment." *Nevada Dept. of Human Resources v.*

*Hibbs*, 538 U.S. 721, 726 (2003). And third, a state may waive its sovereign immunity by consenting to suit. *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999).

Because the issue here is the availability of damages, not injunctive relief, the *Ex Parte Young* exception is inapplicable. The second exception is unavailable because RLUIPA was enacted pursuant to the Spending and Commerce Clauses, *see Cutter*, 544 U.S. at 715, and Congress can abrogate state sovereign immunity only through a valid exercise of its powers under § 5 of the Fourteenth Amendment; Congress cannot abrogate immunity through use of its Article I powers. *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 364 (2001); *Cherry v. Univ. of Wisconsin Sys. Bd. of Regents*, 265 F.3d 541, 554 (7th Cir. 2001) ("Congress cannot override the States' immunity using an Article I power such as Spending Clause legislation."). Thus, official-capacity claims for damages under RLUIPA are barred by the Eleventh Amendment unless a state has waived sovereign immunity.

In its ruling granting summary judgment in favor of Plaintiff, this court observed that RLUIPA might authorize liability against a state "if a state's acceptance of federal funds for its correctional system effects a waiver of Eleventh Amendment immunity."[6] *Agrawal*, 2004 WL 1977581, at *14. In *Marsh*, a magistrate judge in the Western District of Michigan, recommending denial of summary judgment on the defendants' claim of sovereign immunity, concluded that this is indeed the case: "a state is not immune under the Eleventh Amendment from suit by a prisoner alleging violation of the RLUIPA, if the state has accepted federal funds for prison activities or programs on condition that it comply with the RLUIPA." 2006 WL 2439760, at *12. The district court opinion adopting the magistrate's recommendation contains no discussion of sovereign immunity; the defendants

---

[6] The parties do not dispute that IDOC receives federal funds and is thus subject to RLUIPA. Indeed, the Supreme Court in *Cutter* noted that "[e]very State . . . accepts federal funding for its prisons." 544 U.S. at 716 n.4.

apparently did not object to this aspect of the magistrate's recommendation.[7]  *Id.* at *2-3.  In addition, the district court decision that led to the Supreme Court's decision in *Cutter*, upholding the constitutionality of RLUIPA,  concluded that a state's acceptance of federal assistance "necessarily establishes its acquiescence" to suit under RLUIPA's provision creating a cause of action against a "government" and its officials.  *See Gerhardt v. Lazaroff*, 221 F. Supp. 2d 827, 851 (S.D. Ohio 2002), *rev'd sub nom. Cutter v. Wilkinson*, 349 F.3d 257 (6th Cir. 2003), *rev'd*, 544 U.S. 709 (2005). Neither the Sixth Circuit nor the Supreme Court, however, reached the issue of sovereign immunity. Upon further review, this court concludes that IDOC's acceptance of federal funds does not effect a waiver of its sovereign immunity as to official-capacity RLUIPA claims for damages.

The Seventh Circuit has acknowledged that "Congress may, in its exercise of its spending power, condition its grant of funds to the States on their consent to waive their immunity from suit." *Cherry*, 265 F.3d at 554.  The "'mere receipt of federal funds,'" however, does not "'establish that a State has consented to suit in federal court.'"  *Id.* (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 246-47 (1985)).  Rather, Congress must demonstrate a clear intent to require a state to waive its immunity in exchange for its receipt of federal funds; Congress must express that intent "unambiguously," *id.* (quoting *Pennhurst State School and Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)), using "unmistakably clear language," *MCI*, 183 F.3d at 565.  Thus, in *Cherry*, the Seventh Circuit held that Congress "clearly and unambiguously manifested its intent to condition the States' receipt of Title IX funds on their waiver of immunity from suit," where the Civil Rights Remedies Equalization Act provided that "'A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of . . . title IX . . . or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial

---

[7]        The magistrate found, and the district court agreed, that qualified immunity shielded the defendants in their individual capacities and thus entitled them to summary judgment on the plaintiff's RLUIPA claims.  *Marsh*, 2006 WL 2439760, at *2, 14; *see infra* n.14.

assistance.'" *Id.* at 555 (quoting 42 U.S.C. § 2000d-7(a)(1)). Similarly, in *Board of Educ. of Oak Park and River Forest High School Dist. No. 200 v. Kelly E.*, 207 F.3d 931, 935 (7th Cir. 2000), the court held that Congress had properly required Illinois to waive immunity from suit under the Individuals with Disabilities Education Act ("IDEA"), enacted under the Spending Clause. Noting that the IDEA provides that "'[a] State shall not be immune under the eleventh amendment to the Constitution of the United States from suit in Federal court for a violation of this chapter[,]'" the court held that "[l]anguage this direct satisfies the clear-statement requirement." *Id.* (quoting 20 U.S.C. § 1403(a)). Because amenity to suit in federal court was a "string" attached to the money provided under the IDEA, the court concluded that states must "take the bitter with the sweet; having accepted the money, they must litigate in federal court." *Id.*

RLUIPA contains no such explicit language. Although RLUIPA applies where a "program or activity" receives federal funds, 42 U.S.C. § 2000cc-1(b)(1), and additionally creates a cause of action against state and local governments and their officials for "appropriate relief," 42 U.S.C. § 2000cc-2(a), nothing in RLUIPA explicitly ties the two provisions together, as in *Cherry*, or explicitly declares that states cannot assert sovereign immunity, as in both *Cherry* and *Kelly E.* Indeed, RLUIPA never mentions immunity at all. In *Benning v. Georgia*, the Eleventh Circuit did conclude that RLUIPA manifests a sufficiently unambiguous intent for states to waive immunity in exchange for federal prison funds. 391 F.3d 1299, 1305-06 (11th Cir. 2004).[8] This court

---

[8]     The court stated:

Congress unambiguously required states to waive their sovereign immunity from suits filed by prisoners to enforce RLUIPA. Section 2000cc-2(a) provides that "[a] person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a). The statutory definition of government specifically includes states and state agencies. 42 U.S.C. § 2000cc-5(4)(A). Georgia was on clear notice that by accepting federal funds for its prisons, Georgia waived its immunity from suit under RLUIPA.

*Benning*, 391 F.3d at 1305-06.

respectfully disagrees; as this court reads RLUIPA, it does not contain such "unmistakably clear language" as to "unambiguously" evince Congress's intent to require that states waive immunity in exchange for receiving prison funds. As described above, in *Cherry* and *Kelly E.*, the Seventh Circuit found an unambiguous intent for states to waive their immunity only where the federal statutes explicitly declared "a State shall not be immune." RLUIPA lacks such language, and thus the court declines to find a waiver effected merely because RLUIPA creates a cause of action against the states and applies where a state accepts federal funding. Indeed, the Seventh Circuit rejected a similar argument in *Gary A. v. New Trier High School Dist. No. 203*, 796 F.2d 940, 942 (7th Cir. 1986) (per curiam). There, the Education for All Handicapped Children Act provided federal funds to help states pay the costs of educating handicapped children, if a state agreed to establish qualifying educational programs; the statute further created an explicit private right of action, authorizing federal courts to "grant such relief as the court determines is appropriate" if a state's programs fell short of federal requirements. *Id.* at 942-43. The Seventh Circuit found this insufficient to effect a waiver of state sovereign immunity, finding no "unambiguous statutory condition on participation" in the federal program that would provide "an unequivocal indication that the State intends to consent to federal jurisdiction." *Id.* at 943 (quoting *Atascadero*, 473 U.S. at 238 n.1). Moreover, the Supreme Court has instructed federal courts to "find waiver only where stated by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." *College Sav. Bank*, 527 U.S. at 678 (quoting *Edelman v. Jordan*, 415 U.S. 651, 673 (1974)). In light of this standard, as well as the principle that "waivers of sovereign immunity are to be strictly construed in favor of the government," *Marcus v. Shalala*, 17 F.3d 1033, 1039 (7th Cir. 1994), this court concludes that a state's acceptance of federal prison funds does not, by itself, effect a waiver of immunity from damages under RLUIPA.

In any event, even if *Benning* is correct that a state makes itself generally amenable to suit under RLUIPA by its receipt of federal prison funds, it does not necessarily follow that states (and

state officials in their official capacities) thereby waive immunity from suits for money damages. *See Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1025 (D.C. Cir. 2006) ("A waiver of sovereign immunity for some type of remedy does not necessarily extend to suits for damages.") Even in the Eleventh Circuit, a district court, following *Benning*, acknowledged that court's holding but observed that "[a] state's waiver of sovereign immunity from suit . . . does not necessarily waive its immunity from monetary damages" under RLUIPA. *See Limbaugh*, 2006 WL 2642388, *6. The court found that "the reference to 'appropriate relief' in section 2000cc-2(a) is not the kind of unambiguous waiver necessary to subject the [state department of corrections] and the individual defendants in their official capacities to liability for damages[,]" and held that "to the extent the plaintiffs seek monetary relief against . . . the individual defendants in their official capacities, the plaintiffs' claims are barred by the Eleventh Amendment and are subject to dismissal." *Id.*

In *Webman*, the D.C. Circuit considered whether the similar remedial provision in RFRA, also authorizing "appropriate relief against a government," effected a waiver of the federal government's sovereign immunity as to monetary damages. 441 F.3d at 1025 (quoting 42 U.S.C. § 2000bb-1(c)). The federal government may waive sovereign immunity by statute, if that waiver is "'unequivocally expressed in statutory text.'" *Id.* (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1996)). The court in *Webman* found that although RFRA had clearly waived federal immunity as to some forms for relief under RFRA, the statute's reference to "appropriate relief" was "not the 'sort of unequivocal waiver'" sufficient to extend that waiver of immunity to claims for monetary damages. *Id.* at 1025-26 (quoting *Lane*, 518 U.S. at 198). The court noted that "appropriate relief" is "susceptible to more than one interpretation": it might include damages, or it might plausibly be read to include only equitable relief. *Id.* at 1026. Concluding that it "[could] not find an unambiguous waiver in language this open-ended and equivocal[,]" the court held that "RFRA does not waive the federal government's sovereign immunity for damages." *Id.*

The court finds *Webman* compelling. Although Congressional waiver of the federal

government's sovereign immunity is not identical to a state's waiver of its Eleventh Amendment sovereign immunity pursuant to statutes enacted under the Spending Clause, both require statutory language "unambiguously" or "unequivocally" indicating that Congress intended that the respective sovereign not be immune from suit. The *Webman* court concluded that because "appropriate relief" could be read as either including or not including monetary relief, the term was sufficiently ambiguous to preclude the conclusion that the federal government's waiver of immunity extended to an award of damages. 441 F.3d at 1026; *see also United States v. Nordic Village*, 503 U.S. 30, 34 (1992) (holding that although a bankruptcy statute explicitly waived the federal government's sovereign immunity, it was "susceptible of at least two interpretations that do not authorize monetary relief" and thus "fail[ed] to establish unambiguously that the waiver extends to monetary claims"). The use of the same term in RLUIPA—RFRA's successor statute—can be no less ambiguous. The court views it as unlikely that Congress would be able to force the states to waive their immunity from damages claims, where the same language would not support a waiver of federal immunity.

The court concludes that a state does not, by virtue of accepting federal prison funds, thereby waive its Eleventh Amendment sovereign immunity against claims for monetary damages under RLUIPA. Even if RLUIPA were construed to effect a waiver of state sovereign immunity as to certain kinds of claims, the court agrees with the D.C. Circuit in *Webman* and the district court in *Limbaugh* that the term "appropriate relief" is too ambiguous to extend that waiver of immunity to cover claims for monetary damages. Accordingly, to the extent that Defendants may have been sued in their official capacities, monetary damages are unavailable under RLUIPA.

## B. Individual-Capacity Liability for Damages under RLUIPA

The court turns, then, to the issue of whether RLUIPA authorizes individual-capacity claims for damages. As noted, several district courts have either concluded or suggested that RLUIPA does not support such claims. As recognized by the court in *Daker*, 2006 WL 346440, at *8-9,

which came to the opposite conclusion, these courts rely on two, purely textual arguments: first, that RLUIPA authorizes suit against a "government," not individuals, *see, e.g., Morris-El*, 2006 WL 1455592, at *3 ("RLUIPA does not contemplate recovering damages from individuals"); *Boles*, 402 F. Supp. 2d at 1240; and second, that in providing for "appropriate relief," Congress did not explicitly mention damages, *see, e.g., Gooden*, 405 F. Supp. 2d at 723 (RLUIPA "omit[s] any mention of damages"); *Haley*, 401 F. Supp. 2d at 1246. This court, like the court in *Daker*, finds neither line of argument convincing.[9]

RLUIPA's cause of action indeed authorizes a plaintiff to "obtain appropriate relief against a *government*." 42 U.S.C. § 2000cc-2(a) (emphasis added). As set forth above, however, the Act defines "government" to include not only states, municipalities, and their departments and agencies, but also an "official" of such entities and "(iii) *any other person acting under color of State law*." 42 U.S.C. § 2000cc-5(4)(A)(emphasis added). In *Daker*, the court noted that had Congress not added subsection (iii), RLUIPA would clearly contemplate claims against state officials only in their official capacities; but by adding "language that tracks so closely [to] that found in 42 U.S.C. § 1983[10] . . . . Congress seemed to envision a concept of 'government' that would include all those persons amenable to suit under § 1983—including, necessarily, state officials in their individual capacities." 2006 WL 346440, at *9. With regard to the second line of argument, the court observed that even

---

[9]     The court notes that the question of whether RLUIPA authorizes individual-capacity suits and the question of whether damages are available are not separate inquires. A state official is sued in his or her individual rather than official capacity where the official would be personally liable for the monetary relief the plaintiff seeks, and a damage award would not be paid from the state treasury. *See Alden*, 527 U.S. at 757. The availability of an individual-capacity suit thus presupposes the availability of damages. There is no need for a state official to be sued in his or her individual capacity for injunctive relief, for, as noted, official-capacity claims for injunctive relief are allowed under the *Ex Parte Young* exception to state sovereign immunity. *See Bruggeman*, 324 F.3d at 912.

[10]     Section 1983 creates a cause of action against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia[,]" deprives another of constitutional rights. *See* 42 U.S.C. § 1983.

if § 2000cc-2(a) does not explicitly provide for suits for money damages, it does not "explicitly preclude them either." *Id.* (quoting *Jama v. U.S.I.N.S.*, 343 F. Supp. 2d 338, 374 (D.N.J. 2004).

The court also takes note of decisions interpreting RFRA, which similarly allows a plaintiff to "obtain appropriate relief against a government." 42 U.S.C. § 2000bb-1(c); *Hankins*, 441 F.3d at 111 n.3 (observing that RLUIPA's remedial provision is "virtually identical" to that in RFRA); *Jama*, 343 F. Supp. 2d at 372 n.22 (noting that "the counterpart language in RLUIPA" is "nearly identical" to RFRA's authorization of judicial relief). Like RLUIPA, RFRA defines "government" as including an "official" of the federal government, "or other person acting under color of law . . . ." 42 U.S.C. § 2000bb-2(1). In *Jama*, a court in the District of New Jersey considered whether RFRA authorizes individual-capacity suits for damages against federal government officials. 343 F. Supp. 2d at 371. The court initially concluded, as does this court with regard to RLUIPA, that sovereign immunity precludes claims for damages under RFRA against government officials in their official capacities. *Id.* at 373. The court held, however, that RFRA allows individual capacity claims for damages. *Id.* at 374. Like the court in *Daker*, the *Jama* court found significant the statute's broad definition of "government":

> The mere fact that § 2000bb-2(1) provides that people who are not government officials ("and other person acting under color of law") are "government," and thus proper defendants under RFRA, indicates that individual capacity suits must be permitted because no one who is not a government official has an "official capacity" in which to be sued.

*Id.* Having concluded that RFRA thus authorizes suits against individuals, the *Jama* court further found that RFRA allows suits for money damages in particular. The court noted that "while § 2000bb-1(c) does not explicitly permit individual capacity suits for money damages, it does not explicitly preclude them, either[,]" and that it was "by no means evident" that Congress's failure to explicitly provide for money damages meant that damages were unavailable. *Id.* The court also observed that Congress's purpose in enacting RFRA was to "re-invigorate protection of free exercise rights" post-*Smith*, and as courts had previously recognized § 1983 claims for damages

18

for free exercise violations by public officials, it was "unlikely that Congress would *restrict the kind of remedies* available to plaintiffs who challenge free exercise violations in the same statute it passed to *elevate the kind of scrutiny* to which such challenges would be entitled." *Id.* at 374-75 (emphasis in original).

The Seventh Circuit, in a decision vacated when the Supreme Court held RFRA inapplicable to the states in *City of Boerne*, also concluded that RFRA authorized claims for damages against individual defendants. *Mack v. O'Leary*, 80 F.3d 1175, 1177 (7th Cir. 1996), *vacated on other grounds sub nom. O'Leary v. Mack*, 522 U.S. 801 (1997). In *Mack*, an Illinois inmate sued prison officials for damages under RFRA. *Id.* Judge Posner noted that RFRA "says nothing about remedies except that a person . . . 'may . . . obtain appropriate relief against a government.'" *Id.* (quoting 42 U.S.C. § 2000bb-1(c)). Because RFRA "defines 'government' to include government employees acting under color of state law," however, the court held that plaintiff was "entitled to sue the prison officials rather than the State of Illinois and does not face the bar of the Eleventh Amendment." *Id.*; *see also Brown v. Hot, Sexy & Safer Productions, Inc.*, 68 F.3d 525, 537-38 (1st Cir. 1995) (in an action challenging a policy compelling students to attend AIDS awareness training, the court assumed damages are available under RFRA but declined to recognize a retroactive right to recover such damages).

The court finds the above reasoning persuasive. As the courts in *Daker* and *Jama* observed, the fact that RLUIPA does not explicitly provide for money damages is not conclusive; there is no sound reason why "appropriate relief" should, on its face, exclude damages. Indeed, as Plaintiff points out, RLUIPA's text suggests precisely the opposite: the same section of RLUIPA that creates a private cause of action also provides that "[t]he United States may bring an action *for injunctive or declaratory relief* to enforce compliance with this chapter." 42 U.S.C. § 2000cc-2(f) (emphasis added). Had Congress intended in § 2000cc-2(a) to limit relief available to individuals to injunctive or declaratory relief, Congress could have used the same language it used in

§ 2000cc-2(f). By choosing a more expansive definition with regard to the private cause of action, Congress likely intended that something more than injunctive or declaratory relief be available.

Nor can the court ignore the fact that RLUIPA defines "government" in part as "any other person acting under color of State law." *See* 42 U.S.C. § 2000cc-5(4)(A)(iii). Interpreting RFRA's similar language, the Seventh Circuit in *Mack* concluded that RFRA allowed individual-capacity suits for money damages precisely because of this statutory definition. 80 F.3d at 1177; *see Jama*, 343 F. Supp. 2d at 375 n.28 (RFRA cases vacated after *City of Boerne* were not rendered unpersuasive as to the issue of availability of money damages against government officials). Moreover, as both *Daker* and *Jama* observed, the addition of subsection (iii) cannot be mere surplusage. If RLUIPA authorized only official-capacity claims, subsection (iii) would have no purpose because subsection (ii) already authorizes claims against government "officials." *See* 42 U.S.C. § 2000cc-5(4)(A)(ii). Similarly, unless RLUIPA were construed to authorize individual-capacity claims, a "person acting under color of State law" who was *not* a government "official" could not be sued at all. *See Jama*, 343 F. Supp. 2d at 374.

The court further agrees with *Jama* that a reading of RLUIPA that confines a plaintiff to injunctive or declaratory relief would be contrary to Congress's goal, in both RFRA and RLUIPA, of "accord[ing] religious exercise heightened protection from government-imposed burdens." *See Cutter*, 544 U.S. at 714. Both statutes seek to restore the strict-scrutiny *Sherbert* test to generally applicable regulation that burdens religious conduct. *Id.*; *see* 42 U.S.C. § 2000bb(b)(1). A plaintiff could, both before and after RLUIPA, maintain an individual-capacity claim for damages under § 1983 for First Amendment free-exercise violations. *See, e.g., Sutton v. Rasheed*, 323 F.3d 236, 249 & 258 n. 38 (3d Cir. 2003); *Hunafa v. Murphy*, 907 F.2d 46, 46 (7th Cir. 1990). It thus appears unlikely that Congress, in attempting to provide greater protection for religious freedom than was available under the First Amendment, would simultaneously subject regulations to stricter scrutiny

but deny relief that had traditionally been available.[11]  *See Jama*, 343 F. Supp. 2d at 374-75.  The

court further notes that a co-sponsor of RLUIPA in the House of Representatives, in a section-by-

section analysis submitted on the eve of the President's signing the bill, clearly understood RLUIPA

to provide a damages remedy: "Section [2000cc-2(a)] tracks RFRA, creating a private cause of

action *for damages*, injunction, and declaratory judgment, and a defense to liability."  146 CONG.

REC. E1563 (daily ed. Sept. 22, 2000) (statement of Rep. Canady).

Defendants here note that in its decision granting summary judgment for Plaintiff, this court

rejected Defendants' assumption that Defendant Briley's liability under RLUIPA paralleled his

liability under § 1983.  *See Agrawal*, 2004 WL 1977581, at *14.  Defendants point out that the

*Daker* court noted the similarities between § 1983 and RLUIPA's definition of "government" as

including persons acting under color of law, *see* 2006 WL 346440, at *9, and argue that to rely on

*Daker* would be inconsistent with this court's earlier opinion.  (Def.'s Supp., at 7-8.)  In *Agrawal*, the

court addressed Defendants' argument that Defendant Briley was not personally involved in any

decision to deny Plaintiff a religious diet and thus, under well-established rules of § 1983

jurisprudence, could not be held liable under a theory of *respondeat superior* for actions of his

subordinates.  *Agrawal*, 2004 WL 1977581, at *10, 13-14; *see Morfin v. City of East Chicago*, 349

F.3d 989, 1001 (7th Cir. 2003).  The court noted that because RLUIPA, unlike § 1983, "speak[s]

of liable parties as 'governments' rather than 'persons,' RLUIPA appears implicitly to authorize

---

[11]     In addition, in cases where a prisoner is no longer in the custody of the prison officials he has sued, claims for injunctive and declaratory relief would be moot.  *See, e.g., Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996).  Damages can thus be the only form of relief in such situations.  *See Franklin v. Gwinnett County Public Schs.*, 503 U.S. 60, 76 (1992) (holding that federal courts have the power to award any appropriate relief, including damages, where Congress is silent as to what remedies are available under a cognizable cause of action, and observing that equitable remedies would be inadequate for a student who sued a teacher for sexual harassment pursuant to the implied private right of action in Title IX, 20 U.S.C. §§ 1681-1686, because the teacher no longer taught at the school and the plaintiff was no longer a student).  Although *Franklin* does not directly apply here because Congress was not silent as to remedies under RLUIPA, it is unlikely that Congress intended, in light of the broad protections afforded by RLUIPA, that free-exercise plaintiffs be left remediless.

*respondeat superior* liability," and observed that "[b]y its terms, RLUIPA does not preclude an award of relief against a supervisory official based upon a subordinate's actions, unless such relief is 'appropriate.'" *Agrawal*, 2004 WL 1977581, at *14. The court further noted that Congress intended that RLUIPA be construed broadly, and that it imposed a "substantive obligation upon prison officials extending well beyond that imposed by the First Amendment." *Id.* Based on these factors, the court was unwilling to conclude that "Congress intended to incorporate into RLUIPA the judge-made limits of potential liability under § 1983 if other principles of tort law casting a broader net might result in 'appropriate relief.'" *Id.*

Defendants characterize this reasoning as creating a "sweeping distinction" between RLUIPA and § 1983 that renders any present comparison between the two statutes "fundamentally unfair." (Def.'s Supp., at 8.) Defendants mischaracterize the court's approach. The court did not, in its previous ruling, categorically reject any comparison between § 1983 and RLUIPA; rather, the court observed that RLUIPA appears to extend potential liability further than would be available for a First Amendment § 1983 claim, and that limitations on liability that had been available to a § 1983 defendant might therefore not be available in defending a RLUIPA claim. A conclusion that damages, a remedy available under § 1983, are also available under RLUIPA, is not inconsistent with this reasoning. In fact, the opposite is true: a conclusion that damages are *not* available under RLUIPA would truly be inconsistent with the court's observation that RLUIPA expands the universe of liability for free-exercise claims.

Finally, the court is not persuaded that other district court opinions cited by Defendants require the conclusion that damages are unavailable under RLUIPA. Several, as noted, express doubt as to the availability of damages against individual defendants, but do not explicitly hold that the Act does not permit such claims. *See, e.g., Morris-El*, 2006 WL 1455592, at *3 (because the court had not allowed plaintiff to amend his complaint to add a claim under RLUIPA, that claim was not before the court); *Gooden*, 405 F. Supp. 2d at 723 (noting that qualified immunity was irrelevant

"to the extent damages may be unavailable," but finding defendants entitled to qualified immunity to the extent damages were "potentially available"); *Haley*, 401 F. Supp. 2d at 1246 (doubting that RLUIPA authorizes individual-capacity claims for damages, but assuming that such relief was available while addressing defendants' qualified immunity); *Farrow*, 2005 WL 2671541, at *11 n.13 (explicitly declining to address the availability of damages under RLUIPA because the parties had not briefed the issue). The *Boles* court did hold that damages were barred, but did not engage in an extensive analysis of the issue. *See Boles*, 402 F. Supp. 2d at 1240-41. Indeed, most of these decisions simply observe that RLUIPA authorizes relief against "government," not individuals, and thus precludes individual-capacity suits. *See, e.g., Morris-El*, 2006 WL 1455592, at *3; *Gooden*, 405 F. Supp. 2d at 723; *Haley*, 401 F. Supp. 2d at 1246; *Boles*, 402 F. Supp. 2d at 1240. Some further base their reasoning on the fact that RLUIPA "omit[s] any mention of damages." *See Gooden*, 405 F. Supp. 2d at 723. Neither these courts nor Defendants address the fact that RLUIPA's definition of government includes "officials" and "persons," nor have they explained why the term "appropriate relief" should, on its face, exclude damages as opposed to any other type of relief. In contrast, the *Daker* court, and the *Jama* court interpreting RFRA, did engage in a thorough analysis of the relevant statutory language; this court, as explained above, finds their reasoning persuasive.

The court concludes, for the reasons explained above, that RLUIPA's remedial provision, creating a private cause of action for "appropriate relief against a government," authorizes individual-capacity claims for monetary damages.

## C. Limitations Imposed by the PLRA

Defendants argue that even if damages are available under RLUIPA, compensatory damages are precluded by provisions in the PLRA that bar recovery for non-physical injury.[12]

---

[12]     Plaintiff does not respond to Defendants' PLRA argument.

(Def.'s Supp., at 2-3.) Defendants further contend that punitive damages cannot be recovered in this case because there is no evidence that Defendants acted with "malice or evil intent." (*Id.* at 3-4.) Presumably in the alternative, however, Defendants maintain that the amount of any monetary award for noneconomic injury, including punitive damages, is a question of fact that must be reserved for a jury. (Def.'s Resp., at 8-9.)

Section 1997e(e) of the PLRA provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C.A. § 1997e(e). Section 1997e(e) does not, however, "require a showing of physical injury for all prisoner civil rights suits." *Calhoun v. DeTella*, 319 F.3d 936, 940 (7th Cir. 2003) (quoting *Robinson v. Page*, 170 F.3d 747, 748 (7th Cir. 1999)). The absence of an alleged physical injury does not bar the action altogether, but rather functions as a limitation on available relief: the plaintiff cannot recover compensatory damages for mental or emotional injury. *Id.* In the § 1983 context, the Seventh Circuit has held that where a plaintiff alleges deprivation of a constitutional right, that deprivation is itself a cognizable injury; thus, § 1997e(e) "leaves unaffected claims for nominal and punitive damages" arising from the constitutional violation. *Id.* at 940-41 (concluding that § 1997e(e) bars compensatory damages, but does not preclude awards of nominal or punitive damages for an Eighth Amendment violation under § 1983, where a prisoner alleged only psychological injury arising from a strip-search in front of female guards); *see Rowe v. Shake*, 196 F.3d 778, 781 (7th Cir. 1999) ("A deprivation of First Amendment rights standing alone is a cognizable injury."); *see also Searles v. Van Bebber*, 251 F.3d 869, 879-81 (10th Cir. 2001) (vacating jury award of compensatory damages where plaintiff brought a First Amendment claim over prison officials' refusal to provide a kosher diet, but holding that nominal and punitive damages were not barred by § 1997e(e) and should be considered on remand).

The Seventh Circuit has not yet considered whether the PLRA similarly limits relief in the

RLUIPA context. There is no doubt that the PLRA applies: as the Supreme Court noted in *Cutter*, § 2000cc-2(e) of RLUIPA provides that "[n]othing in [RLUIPA] shall be construed to amend or repeal the Prison Litigation Reform Act of 1995." 42 U.S.C. § 2000cc-2(e); *Cutter*, 544 U.S. at 723 n.12. Several district courts, including three in the Seventh Circuit, have concluded that § 1997e(e) of the PLRA bars claims for compensatory damages for mental and emotional injury under RLUIPA, but does not bar nominal or punitive damages. In *Shidler v. Moore*, 446 F. Supp. 2d 942, 947-48 (N.D. Ind. 2006), the court held that the plaintiff, a Sunni Muslim, had stated claims under § 1983 and RLUIPA arising from prison officials' alleged refusal to allow him to practice his religion. The court concluded that § 1997e(e) barred compensatory damages for the RLUIPA claims absent a demonstration of physical injury, but granted plaintiff leave to proceed against prison officials in their individual capacities for nominal and punitive damages under both RLUIPA and § 1983. *Id.* at 946-48. In *Andreola*, 2006 WL 2038364, at *2-3, a court in the Eastern District of Wisconsin expressed uncertainty as to whether RLUIPA's provision for "appropriate relief" authorized compensatory damages, but held that even if it did, § 1997e(e) of the PLRA operated identically with regard to RLUIPA and First Amendment § 1983 claims, barring claims for compensatory damages for mental or emotional injury. The court refused, however, to grant summary judgment for the defendant prison officials on the plaintiff's claims for punitive damages, noting that although the parties had not briefed whether punitive damages could constitute "appropriate relief" under § 2000cc-2(a), such damages were available under § 1983 if the defendant prison officials' conduct in denying plaintiff a kosher diet was a product of evil motive or intent, or reckless or callous indifference to plaintiff's rights. *Id.* at *3 & n.3. In *Meyer*, 411 F. Supp. 2d at 991, a court in the Western District of Wisconsin similarly held that § 1997e(e) barred compensatory damages under RLUIPA where the plaintiff alleged only emotional suffering as a result of being left off of a list of prisoners entitled to attend Native American religious ceremonies. The court further held, however, that § 1997e(e) "leaves unaffected claims for punitive damages," *id.* (citing *Calhoun*, 319 F.3d at 941), and that a

jury could reasonably find that the defendant prison chaplain acted with the requisite "evil" motive if, as plaintiff alleged, he left plaintiff off the list in retaliation for plaintiff's threat to file a lawsuit. *Id.*

Other district courts have extended § 1997e(e) slightly further, holding that while it does not bar punitive damages claims altogether, it precludes punitive damage claims to the extent such claims are related to the plaintiff's mental or emotional distress. *See Daker*, 2006 WL 346440, at *10 (claims for compensatory damages barred by § 1997e(e), but punitive damages allowed "at least vis-a-vis those claims not predicated on 'mental or emotional injury'"); *Bloch v. Samuels*, Civil Action No. H-04–4861, 2006 WL 2239016, at *6 (S.D. Tex. Aug. 3, 2006) ("to the extent that [plaintiff] seeks punitive damages to compensate for any alleged emotional harm resulting from a constitutional violation, this claim also appears barred by the PLRA."). The court can locate only one court that suggests that the PLRA bars all damages claims under RLUIPA. In *Schneider v. Donald*, No. CV 305-158, 2006 WL 1344587, *4 (S.D. Ga. May 12, 2006), cited by Defendants, the court stated, without elaboration, that "plaintiff's failure to allege physical injury in his complaint precludes him from seeking damages in this case." It is not clear, however, whether the plaintiff in *Schneider* sought punitive damages.

The court agrees with the decisions from other district courts in the Seventh Circuit that § 1997e(e) bars claims for compensatory damages for mental and emotional injury, but is inapplicable to claims for nominal or punitive damages. The court, moreover, disagrees with the courts in *Daker* and *Bloch* that found claims for punitive damages barred to the extent such claims are premised on mental or emotional distress. As the Seventh Circuit observed in holding that the PLRA does not preclude punitive damages in the § 1983 context, "because punitive damages are designed to punish and deter wrongdoers for deprivations of constitutional rights, they are not compensation 'for' emotional and mental injury." *Calhoun*, 319 F.3d at 942. Punitive damages are determined with respect to a defendant's conduct, and by their nature do not compensate a plaintiff for injury; accordingly, the PLRA is not implicated.

In this case, Defendants concede that Plaintiff is entitled to nominal damages for his RLUIPA claim. (Def.'s Supp., at 3.) As for compensatory damages, it appears that Plaintiff claims no physical injury as a result of Defendants' denial of his requested diet; rather, he asserts only mental or emotional distress. In his Amended Complaint, which the court treated as Plaintiff's statement of undisputed facts for purposes of his motion for summary judgment, *see Agrawal*, 2004 WL 1977581, at *1, Plaintiff asserted that as a result of Defendants' refusal to provide him with a vegetarian diet, he suffered "pain of hunger, mental anguish and emotional distress," as well as "feeling of guilt" when his hunger led him to reluctantly eat eggs. (Am. Compl. ¶¶ E.6, E.9.) Plaintiff does not specify any other physical manifestation of hunger pain, such as weight loss; nor is there any evidence of physical injury in the record. The court thus infers that Plaintiff intended "pain of hunger" to represent a non-physical injury. In any event, the court doubts that "pain of hunger," standing alone, overcomes the PLRA's bar to recovering compensatory damages for non-physical injury. *Cf. Martin v. Gold*, No. 1:05-CV-28, 2005 WL 1862116, at *9 (D. Vt. Aug. 4, 2005) (noting that "headaches and hunger pains may not satisfy the PLRA requirement," but finding that requirement met where plaintiff's teeth were pulled, prison officials did not provide dentures for thirteen months thereafter, and plaintiff experienced constant pain from attempting to chew prison food without teeth); *see also Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999) (finding inmate plaintiff's Eighth Amendment § 1983 claim frivolous where plaintiff alleged hunger pain from prison guard's denial of access to dining hall on several occasions, but failed to claim weight loss or any other "adverse physical effects"). Accordingly, the court concludes that to the extent Plaintiff has suffered non-physical injury, compensatory damages for his RLUIPA claim are barred by the PLRA.

With respect to punitive damages, such claims are unaffected by the PLRA and are available under RLUIPA. Defendants contend, however, that punitive damages are unavailable in this case because "Plaintiff has provided no evidence of malice or intent of any kind" on the part of Defendants. (Def.'s Supp., at 4.) *See Bloch*, 2006 WL 2239016, at *6 (granting summary

judgment for defendant on federal prisoner's RFRA and RLUIPA claims because compensatory damages were barred by the PLRA, and punitive damages were unavailable where plaintiff "ha[d] not alleged facts showing that the defendants' conduct was so egregious or reprehensible as to warrant punitive damages"); *cf. Meyer*, *supra*. In an earlier brief on the issue of RLUIPA damages, Defendants had acknowledged that a jury, not the court, should determine the amount of both compensatory[13] and punitive damages: "should the [c]ourt determine that a monetary award may be appropriate, this question must be reserved for a jury." (Def.'s Resp., at 9.) To the extent that Defendants are now asking the court to conclude, as a matter of law, that no reasonable jury could find that Defendants acted with a motive that warrants punitive damages in this case, such an argument might be appropriate in a motion for summary judgment on the issue of punitive damages. *See, e.g., Juarez v. Menard, Inc.*, 366 F.3d 479, 480-81 (7th Cir. 2004) (affirming grant of summary judgment for the defendants on the issue of punitive damages). Absent such a motion, however, no factual record has been developed with regard to Defendants' motives, and the parties have not briefed the issue of what standard should be applied to those motives. Accordingly, having found that punitive damages are available under RLUIPA and are not precluded by the PLRA, the court is unwilling to conclude that punitive damages are barred as a matter of law on Plaintiff's RLUIPA claim.

### D. Qualified Immunity

In denying Defendants' motion to dismiss Plaintiff's Amended Complaint, which added the RLUIPA claim to the First Amendment § 1983 claim, this court on November 25, 2003 concluded that Defendants were not shielded by qualified immunity for their actions in denying Plaintiff's request for a religious diet. *Agrawal*, 2003 WL 22839813, at *2-3. Defendants now ask the court

---

[13] Defendants did not, in their first brief on the issue of availability of RLUIPA damages, advance the argument that compensatory damages were barred by the PLRA; Defendants refer to the PLRA for the first time in a supplemental filing. (Def.'s Supp., at 2.)

to reconsider its denial of qualified immunity "to the extent that the court finds that damages are available to plaintiffs under RLUIPA." (Def.'s Supp. at 12.) The court declines to do so.

The defense of qualified immunity protects government agents "'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Knox v. Smith*, 342 F.3d 651, 657 (7th Cir. 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity applies only to claims for damages, not to claims for injunctive or declaratory relief. *See Valley v. Rapides Parish Sch. Bd.,* 118 F.3d 1047, 1051 n.1 (5th Cir. 1997); *Canedy v. Boardman*, 91 F.3d 30, 33 (7th Cir. 1996). Thus, the court's earlier determination of qualified immunity necessarily assumed the availability of damages. The fact that the court now conclusively determines what it before implicitly assumed, i.e., that damages are available under RLUIPA, in no way alters the basis for the court's previous qualified immunity determination.[14]

---

[14] The court notes that one recent district court in the Western District of Michigan, in an opinion issued after the parties had filed their briefs in this matter, concluded that uncertainty over the availability of damages under RLUIPA constituted sufficient grounds for a finding of qualified immunity. In *Marsh*, the plaintiff, a self-professed Wiccan, brought a RLUIPA claim against the governor of Michigan and state prison officials for various interferences with the exercise of his Wiccan beliefs. 2006 WL 2439760, at *3-4. The court approved the magistrate's recommendation of qualified immunity. *Id.* at *2. Because "the case law with regard to whether Defendants are liable for damages under the RLUIPA is currently unsettled," the defendants "could have reasonably believed that their conduct did not expose them to liability in their individual capacities" under RLUIPA. *Id.*

This court respectfully disagrees with this conclusion. The qualified immunity inquiry involves determining whether a defendant's conduct violated "'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *See Knox*, 342 F.3d at 657 (quoting *Harlow*, 457 U.S. at 818). A right is "clearly established" if its contours are "'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). "The proper question to ask is 'whether the state of the law [at the time of the incident] gave [defendants] fair warning that their alleged treatment of [the plaintiff] was unconstitutional.'" *Id.* (quoting *Hope*, 536 U.S. at 739). Thus, the focus of the inquiry is on a defendant's awareness of the substantive constitutional or statutory right which the plaintiff claims the defendant violated, and not on the defendant's awareness of any particular remedy. If a defendant knew or reasonably should have known that his or her conduct violated a plaintiff's clearly established rights, qualified immunity is unavailable; the fact that the defendant was uncertain as to whether the violation would

(continued...)

Nor is the court persuaded that its earlier decision on the issue was in error. Defendants cite a recent unpublished order from another court in this district, which, according to Defendants, "ruled that Department Rule 425.70 passes constitutional muster." (*Id.* at 11.) According to Defendants, this "inconsistency within the Northern District of Illinois as to the constitutionality of Department Rule 425.70" entitles Defendants to qualified immunity because there was thus no "clearly defined right" that Defendants could have violated. (*Id.*)

Rule 425.70 defines the procedure an institutional chaplain, here Defendant Peterson, is to follow when determining whether a prisoner may receive a special diet for religious reasons:

> A committed person may submit a written request to the facility chaplain to receive an alternative diet for specific religious reasons. The request must contain written verification that the committed person is a member of a faith group that requires adherence to a particular diet and the specific requirements of the diet. Eligibility to receive an alternative diet for specific religious reasons shall be determined by the facility chaplain who shall ordinarily confer with a religious leader or faith representative of the faith group at issue. The facility chaplain and the religious leader or faith representative may interview the committed person.

ILL. ADMIN CODE tit. 20, § 425.70. As explained more fully in its previous rulings, Defendants interpreted the Rule's "written verification" provision as requiring Plaintiff to obtain a letter from a recognized clergy member, verifying that he was, in fact, a Vaishnava Hindu, and that Vaishnava Hinduism required the diet he requested. *See Agrawal*, 2004 WL 1977581, at *6; *Agrawal*, 2003 WL 164225, at *2. Contrary to Defendants' implied assertion, this court has *not* held Rule 425.70 unconstitutional as written. Rather, it was Defendants' interpretation and application of Rule 425.70 that violated Plaintiff's rights, as nothing in the regulation appeared to require that a clergy person provide the required "written verification." *Agrawal*, 2004 WL 1977581, at *7. The court, in its initial review of Plaintiff's complaint, found that he had stated a First Amendment claim because he alleged that Defendants' inconsistently applied Rule 425.70 in requiring no such similar verification

---

[14](...continued)
result in personal monetary liability, rather than some other adverse consequence, does not undo the violation and should not operate so as to restore the defendant's immunity.

from members of the "Hebrew Israelite" faith. *Agrawal*, 2003 WL 164225, at *3. In granting summary judgment in favor of Plaintiff on his RLUIPA claim, the court "conclude[d] that *as interpreted by Defendants*, the regulation imposed a substantial burden on Plaintiff." *Agrawal*, 2004 WL 1977581, at *6 (emphasis added). The court noted that a prisoner could, consistent with the requirements of Rule 425.70, provide written verification of his religious dietary needs without having to obtain proof from a clergy member; such a requirement would not impose a "substantial burden" and would be a considerably less restrictive means of furthering Defendants' interests. *Id.* at *6, 9. Although the court additionally expressed First Amendment concerns, these were expressed with regard to Defendants' particular requirements for obtaining written verification, not as to a written verification requirement *per se.* Noting Defendant Peterson's understanding that an inmate was responsible for obtaining a letter from a clergy member, the court observed that "this *procedure* is inconsistent with the First Amendment." *Id.* at *6 (emphasis added).

Nor does the court understand the recent district court ruling on which Defendants rely as upholding the constitutionality of Rule 425.70. In *Whitfield v. Illinois Dept. of Corrections*, No. 02 C 50387, slip op. at 1-2 (N.D. Ill. Mar. 20, 2006), the court, granting summary judgment in favor of IDOC officials on an inmate's First Amendment claim, observed that "plaintiff never submitted any evidence to verify his affiliation with the African Hebrew Israelite religion beyond his own self-serving assertions. It is clearly reasonable for corrections officials to require an inmate to demonstrate the legitimacy of his religious affiliation before providing him reasonable accommodations to practice his religion." No factual background is provided in the opinion; it is unclear whether the plaintiff's claim even arose from denial of a religious diet, whether IDOC required a letter from a clergy member, or indeed what kind of proof IDOC required for the plaintiff to "demonstrate the legitimacy" of his religion. This court does not read the above language as a ringing endorsement of Rule 425.70; in fact, Rule 425.70 is not even mentioned in the ruling. *Whitfield* thus does not establish an intra-district conflict as to the constitutionality of Rule 425.70.

31

More importantly, the constitutionality of Rule 425.70 was, and is, irrelevant to the court's qualified immunity analysis. As noted, qualified immunity is unavailable if a government official violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope*, 536 U.S. at 739 (quoting *Harlow*, 457 U.S. at 818). A right is "clearly established" if its contours are "'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). This court found that Defendants were not entitled to qualified immunity because a reasonable official would have known that Defendants' alleged conduct violated Plaintiff's rights under RLUIPA. *Agrawal*, 2003 WL 22839813, at *2. Specifically, the court found that Defendants should reasonably have known that forcing Plaintiff to choose between religious observance and adequate nutrition imposed a "substantial burden" on his free exercise rights. *Id.* at *3. The question of whether those rights were "clearly established" involved concerns about the constitutionality of RLUIPA, not Rule 425.70.[15] The constitutional validity of the policy pursuant to which Defendants believed they were acting has nothing to do with whether Plaintiff's substantive rights under RLUIPA were "clearly established," especially as it was Defendants' interpretation of Rule 425.70 that the court found significant, not the Rule itself.

## CONCLUSION

For the reasons explained above, the court concludes that RLUIPA authorizes claims for monetary damages against state officials in their individual capacities. Nominal and punitive damages are available under RLUIPA; claims for compensatory damages, however, are barred by § 1997e(e) of the PLRA to the extent those claims are based on allegations of mental or emotional

---

[15] The court noted that at the time of Defendants' actions in 2001, RLUIPA had just been enacted, and its constitutionality as an exercise of Congress's spending power was in dispute. *Agrawal*, 2003 WL 22839813, at *2. The court observed, however, that RLUIPA's substantive provisions were consistent with pre-*Smith* Free Exercise jurisprudence, and thus were very much "old law, not new." *Id.*

injury.  In this case, as it appears that Plaintiff has alleged only non-physical injury, compensatory damages are unavailable for Plaintiff's RLUIPA claim.  Having found Defendants liable, the court awards Plaintiff nominal damages of $1.  Punitive damages, if any, shall be ascertained by jury.

ENTER:

Dated:  December 6, 2006

_____
REBECCA R. PALLMEYER
United States District Judge