**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SHREE M. AGRAWAL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 02 C 6807 |
| v. ) | |
| ) | Judge Rebecca R. Pallmeyer |
| KENNETH R. BRILEY, CHARLES PETERSON, ) | |
| ANTHONY DAVIS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Shree Agrawal, a prisoner in the custody of the Illinois Department of Corrections ("IDOC"), has brought this *pro se* civil rights case under 42 U.S.C. § 1983 against Kenneth Briley, the Warden of Stateville Correctional Center; Charles Peterson, Stateville's prison chaplain; and correctional officer Anthony Davis. Agrawal alleges that Defendants violated his rights under the Religious Land Use and Institutionalized Persons act ("RLUIPA") and under the First, Eighth, and Fourteenth Amendments by denying him his desired religious diet, by confiscating his electric razor, and by prohibiting him from purchasing a "graphic calculator"[1] from the commissary at Stateville.

## PROCEDURAL HISTORY

The case has been the subject of several lengthy rulings. On initial review, the court concluded that by alleging that his request for a religious diet had been denied, Agrawal stated a claim under the First Amendment. *Agrawal v. Briley*, No. 02 C 6807, 2003 WL 164225 (N.D. Ill. Jan. 22, 2003). Plaintiff's amended complaint added a claim under RLUIPA. The court denied Defendants' Rule 12(b)(6) motion to dismiss that claim, *Agrawal v. Briley*, No. 02 C 6807, 2003 WL 22839813 (N.D. Ill. Nov. 25, 2003), and later concluded that Plaintiff was entitled to summary judgment on his RLUIPA claim as against Defendants Peterson and Briley. *Agrawal v. Briley*, No.

---

[1] It appears that this is a variant of "graphing calculator," a term with which the court is more familiar.

02 C 6807, 2004 WL 1977581 (N.D. Ill. Aug. 25, 2004). The court then appointed counsel to represent Plaintiff and brief damages issues. In its most recent opinion, the court reviewed the then-available authority and concluded that RLUIPA authorizes recovery of monetary damages against state officials in their individual capacity, limited, however, in a case where plaintiff has suffered no physical injury, to nominal damages and punitive damages. As noted in that earlier ruling, the Prison Litigation Reform Act ("PLRA") bars recovery of compensatory damages for mental or emotional injury. *Agrawal v. Briley*, No. 02 C 6807, 2006 WL 3523750 (N.D. Ill. Dec. 6, 2006).

Soon after the entry of that ruling, Defendants Davis, Peterson, and Briley moved for partial summary judgment. The motion does not challenge Plaintiff's First Amendment claim. Defendants argue that they are entitled to judgment as a matter of law on all claims other than Plaintiff's First Amendment and RLUIPA claims against Defendants Briley and Peterson. Appointed counsel for Plaintiff was not able to respond to that motion for several months, due largely to the press of other responsibilities, and the court granted repeated extensions of the time for filing a response. Plaintiff's attorneys ultimately did prepare a response, but declined to file it on the August 10, 2007 due date because they learned that, days earlier, Plaintiff had filed a new lawsuit naming them, opposing counsel, and the judge in this case, as defendants. On its own motion, the court dismissed appointed counsel and directed Plaintiff to respond *pro se* to the motion for summary judgment.

Plaintiff did so, several months later, by way of his own cross-motion for summary judgment. He also moved for substitution of the judge and for the production of certain documents. Then in May 2008, Defendants moved for reconsideration of the court's earlier damages ruling. Defendants cited the Seventh Circuit's ruling in *Koger v. Bryan,* 523 F.3d 789 (7th Cir. 2008), that where a prisoner challenging the denial of his desired religious diet has alleged only mental or emotional injury, he is entitled to recover nominal damages only.

2

The court addresses several of these motions below. Relevant facts appear in the court's earlier decisions and will be referred to here only where necessary for context.

## DISCUSSION

I. **Motion for Substitution of Judge**

Before turning to the summary judgment motion, the court notes Plaintiff's "motion for substitution" in which he asks that the case be reassigned to "some other fair and impartial judge." He contends that the presiding judge's impartiality is tainted by his decision to name the judge as a defendant in another lawsuit, and believes this is the reason the court removed his appointed attorneys from the case. (Docket No. 193 ¶ 6.) The standard for recusal under 28 U.S.C. §§ 144, 455 is "whether a reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits." *Hook v. McDade*, 89 F.3d 350, 354 (7th Cir. 1996) (citation omitted). The judge's previous adverse rulings are not a sufficient basis for recusal, *Mayes v. Leipziger,* 729 F.2d 605, 607 (9th Cir. 1984), nor does the fact that a litigant has named a judge in a collateral lawsuit ordinarily establish a basis for recusal:

> There is no rule that requires a judge to recuse himself from a case, civil or criminal, simply because he was or is involved in litigation with one of the parties. . . . . . One reason for this policy is that a per se rule of disqualification would allow litigants to judge shop by filing a suit against the presiding judge. . . . . And even if litigation against a judge is not for the purpose of disqualification, recusal is not automatic because suits against public officials are common and a judge would likely not harbor bias against someone simply because the person named in him in a meritless civil suit.

*In re Taylor*, 417 F.3d 649, 652 (7th Cir. 2005); *see also United States v. Pryor*, 960 F.2d 1, 3 (1st Cir. 1992) ("It cannot be that an automatic recusal can be obtained by the simple act of suing the judge."); *Ronwin v. State Bar of Arizona*, 686 F.2d 692, 700-01 (9th Cir. 1981) (a judge is not disqualified by a litigant's suit against him) *rev'd on other grounds sub nom. Hoover v. Ronwin*, 466 U.S. 558 (1984); *United States v. Grismore*, 564 F.2d 929, 933 (10th Cir. 1977) (same). As the Seventh Circuit has explained, it is improper for a litigant "to create the ground on which he seeks

the recusal of the judge assigned to his case. That is arrant judge-shopping." *Sullivan v. Conway*, 157 F.3d 1092, 1096 (7th Cir. 1998); *accord*, *United States v. Owens*, 902 F.2d 1154, 1156 (4th Cir. 1990) ("Parties cannot be allowed to create the basis for recusal by their own deliberate actions. To hold otherwise would encourage inappropriate 'judge shopping.'")

As described above, the court has ruled in Plaintiff's favor on his RLUIPA claim. The only specific ruling that Plaintiff has identified as improper is the court's ruling permitting Plaintiff's appointed counsel to withdraw. (Docket No. 193 ¶ 4.) Plaintiff asserts that contrary to the court's statement, he has never "expressed any dissatisfaction to court with appointed counsel." (*Id.* ¶ 5.) Plaintiff did, however, name his attorneys as defendants in a civil action in which he alleged that they had conspired with the court and with defense counsel to deprive him of his civil rights. *See Agrawal v. Pallmeyer*, No. 07 C 4283. The court stands by its conclusion that the filing of that action constitutes an expression of dissatisfaction with his appointed lawyers. Removal of those lawyers from further service on this case is not a reflection of judicial bias.

Plaintiff's motion for substitution (193) is denied.

**II.     Defendants' Motion for Summary Judgment / Plaintiff's Cross-Motion**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In determining whether a genuine issue of material fact exists, a court will view the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See, e.g.*, *Springer v. Durflinger*, 518 F.3d 479, 483-84 (7th Cir. 2008). Nonetheless, the nonmoving party must present evidence to support its position and not rely merely on its own assertions and speculation "to manufacture a genuine issue of fact." *Id.* at 484 (quoting *Amadio v. Ford Motor Co.*, 238 F.3d 919, 927 (7th Cir. 2001)). A "genuine issue" is raised when a reasonable factfinder could find in favor of the nonmoving party on that issue. *Hottenroth v. Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004).

If, after drawing all reasonable inferences in the nonmoving party's favor, no reasonable factfinder could find in favor of the nonmoving party as to an element that party will be required to prove at trial, summary judgment is appropriate. *Id.* (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1996)).

As noted, Defendants' motion for summary judgment does not challenge Plaintiff's First Amendment or RLUIPA claims on their merits. Defendants do argue in their motion that Defendant Davis is not liable on those claims and that all Defendants are entitled to judgment as a matter of law on Plaintiff's Eighth Amendment and equal protection claims. Plaintiff has responded with an additional statement of facts, as well as his own motion for summary judgment.[2] For the reasons explained here, Defendants' motion is granted and Plaintiff's motion is denied.

### A. Eighth Amendment

In his Second Amended Complaint, Plaintiff alleges that by denying his requests for a religious diet, Defendants Briley and Peterson violated his rights under the Eighth Amendment. A prison official violates the Eighth Amendment when he denies a prisoner's "basic human needs" or deprives him of "the minimal civilized measure of life's necessities." *Antonelli v. Sheahan*, 81 F. 3d 1422, 1427 (7th Cir. 1996) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). In *Antonelli*, the Seventh Circuit recognized that prison officials have an obligation to provide inmates with "nutritionally adequate food." 81 F.3d at 1432.

As reflected in earlier opinions in this case, the court has concluded that prison officials violated Plaintiff's rights under RLUIPA by depriving him of the religious diet he requested. In a similar case, the Seventh Circuit has now reached the same conclusion. *See Koger v. Bryan*, 523 F.3d 789, 799-801 (7th Cir. 2008) (prison officials violated RLUIPA by requiring prisoner to produce a written statement from clergy before providing him with a non-meat diet).

---

[2] Defendants have moved to strike Plaintiff's Rule 56.1 Statement of Facts (Docket No. 191), but that motion is stricken as moot.

There may be circumstances in which denial of a prisoner's requested diet results in serious hunger or malnutrition, but Defendants have offered evidence that this is not such a case. Plaintiff made no complaints concerning any lack of nutrition to his doctors. Medical progress notes from February 9, 2001 through January 30, 2002, during the period when Plaintiff was denied his desired diet, show that Plaintiff repeatedly told the doctor that he was "okay." (Medical Progress Notes, Ex. A to Defs.' 56.1 [152].) As Defendants observe in their motion, there is no indication in those records that Plaintiff ever complained of insufficient nutrition, hunger pains, or weight loss. Plaintiff himself has submitted a copy of a note dated January 8, 2001 from Stateville medical staff congratulating him on the fact that his weight was "within or above the appropriate body weight range." (1/8/01 Memorandum, Ex. to Decl. of Shree Agrawal [196]). And, in his deposition, Plaintiff admitted that he was able to make choices from the regular food line that accommodated his desire for a restricted diet:

> Q. On the line, on the food line at Stateville, were there vegetarian options on the food line?
>
> A. There was some food which I expect was vegetarian, there was other food which was non-vegetarian, yes.
>
> Q. So you could go through and make choices on that line that may not have been perfect but would have brought you closer to the diet that you wanted, correct?
>
> A. I was always doing that.
>
> Q. Oh, okay. So you made vegetarian choices without even being on the religious diet?
>
> A. Right.

(Agrawal Dep., Ex. B to Defs.' 56.1 [152], at 47.)

These circumstances are like those presented in *Dillard v. Washington*, No. 95 C 6282, 1997 WL 305312 (N.D. Ill. May 29, 1997), where Judge Kocoras of this court considered a prisoner's claim that his health had been compromised by prison officials' refusal to provide him

6

with the vegetarian food he requested for religious reasons. The claim failed as a matter of law because there was no evidence that the prisoner "ever complained about his weight loss or of suffering from malnutrition . . . ." 1997 WL 305312 at *5. *See also LaFevers v. Saffle,* 936 F.2d 1117 (10th Cir. 1991) (mere denial of a requested vegetarian diet is insufficient to establish a cognizable Eighth Amendment claim); *cf. Moore Bey v Douglas County Corr. Facility*, No. 08-3036-JAR, 2008 WL 2783140, *5 (D. Kan. July 15, 2008) (denying prisoner's motion for summary judgment where his Eighth Amendment claim rested solely on an "accusation," unsupported by evidence in the record, "that he was starved for over 100 days because he was not given food that he could eat in accordance with his religion.")

Plaintiff Agrawal insists that he did suffer harm as a result of the denial of his desired diet. In a sworn declaration, Agrawal asserts: "As a result of receiving insufficient food, I suffered from weakness, dizziness, lack of sleep due to hunger, tiredness, inability to read and write, inability to concentrate or meditate, frustration, headache, depression, weight loss and weight fluctuation. To conserve energy I stopped exercising." (Agrawal Decl. [196] ¶ 24.) But he offers no evidence that the named Defendants were aware of these alleged injuries. To the contrary, Agrawal asserts that when, near the end of his stay at Stateville, he went on an "official hunger strike," he concluded that the correctional officers had made no record of his hunger strike; he therefore decided to accept a food tray. (*Id.* ¶¶ 26-29.) Grievances that Agrawal submitted concerning this issue could well have put Defendants on notice of his religious objection to standard prison fare. (*See* 1/31/01 Grievance, Ex. to Pl.'s 56.1 [195].) They did not mention hunger or weight loss, however. To establish a violation of the Eighth Amendment, Plaintiff must show that Defendants both knew of and disregarded an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The record does not show any genuine dispute of fact on this issue.

Defendants' motion for summary judgment on the Eighth Amendment claim is granted.

7

### B. Official Capacity

In a January 21, 2003 opinion, the court dismissed all official capacity claims against all Defendants. *Agrawal*, 2003 WL 164225, *4. Defendant Davis was not a named defendant in the lawsuit at that time, but the reasons for dismissal of official-capacity claims against the other Defendants are equally applicable to him: The Eleventh Amendment bars suits in federal courts against state officials in their official capacities when the state is the real party in interest. There is an exception to that general rule for cases where the plaintiff seeks injunctive relief against a state official's ongoing violation of federal law. *Ex parte Young,* 209 U.S. 123, 159-60 (1908). That exception does not apply here, as Davis is a correctional officer at Stateville, and Plaintiff is now confined at the Menard Correctional Center.

Official capacity claims against all Defendants, including Defendant Davis, are dismissed.

### C. Equal Protection

In a minute order dated March 14, 2003, the court allowed Plaintiff to pursue a "class of one" equal protection claim. Such a claim requires a plaintiff to establish that he has been intentionally treated differently from others similarly situated, and that there is no rational basis for the difference in treatment. *Sellars v. City of Gary*, 453 F.3d 848, 850 (7th Cir. 2006). Plaintiff in this case challenges the prison's failure to provide him with the religious diet he requested; their refusal to permit him to keep his electric razor; and the unavailability of a graphic calculator in the prison commissary. Plaintiff may well have been unaware of any other prisoner who was denied a religious diet, had his razor confiscated, or was unable to purchase a graphic calculator. But there is no evidence that the decisions made in his case were anything other than enforcement of generally-applicable prison policy.

As explained at length earlier, this court has concluded that Defendants violated RLUIPA by requiring clergy verification of an inmate's religious practice before providing a specialized religious diet. Defendants did not satisfy the court that this requirement was justified by a

compelling governmental interest. *Agrawal*, 2004 WL 1977581. That the policy was not justified by a compelling interest does not establish, however, that there was no rational basis for it; Warden Briley explained that requiring such a verification protected resources and deterred manipulation by inmates of the system for providing meals. *Id.* at *8-9.

More importantly for purposes of this motion, Plaintiff acknowledges that the policy Plaintiff challenges here is codified in a departmental rule. (Agrawal Dep. at 52.) The court concluded that the challenged policy does not survive RLUIPA scrutiny, but not that it was applied differently to Plaintiff than to others in his circumstances. Chaplain Peterson acknowledged that some inmates were not required to provide clergy verification of the need for a restrictive diet. He explained that the requirement of written verification from a faith leader was essentially excused for those inmates who practiced religions for which there has been a previous verification of the need for dietary restrictions. (Peterson Dep., Ex. D to Defs.' 56.1 [152]. at 110-112.) Plaintiff is an adherent to the Vaishnava Hindu faith—one that, as noted, has few or perhaps no other adherents within the Illinois prison system. Plaintiff acknowledged that he knew of no other Hindu at Stateville and was one of at most a very small number of Hindu inmates within the Illinois Department of Corrections. (Agrawal Dep. at 44-45.) He testified, further, that he does not know that the process of being approved for a religious diet is different for inmates of other faiths, and that to his knowledge the regulation was applied to Hindu inmates no differently than it was applied to inmates of other religions. (*Id.* at 52-53.)

Plaintiff's claims regarding his razor and the calculator fail for the same reason: Plaintiff may question the wisdom and fairness of Stateville's policies with respect to these matters, but there is no basis whatever to suggest he was singled out for adverse treatment. Defendant Davis, the property officer at Stateville, explained that razors with beard trimmers generated security concerns due to reports that they could be used to prison bars or be converted into tattoo guns. (Andrew Davis Dep., Ex. G to Defs.' 56.1 [152], at 42.) He testified that at some point "[t]hey had come out

with a [statewide] policy specifically stating that beard trimmers . . . and . . . razors with beard trimmer attachments were considered contraband." (*Id.* at 28, 29.) When the new policy was issued, prisoners who had such items were given the option of sending the razor home, destroying it, or removing the detachable beard trimmer. (*Id.* at 36.) Davis recalled that hundreds of razors were seized and that the effort to round them up involved a number of counselors over the course of a week. (*Id.* at 37, 39.) He acknowledged, further, that despite the effort, he believes staff never successfully collected all of them. (*Id.* at 41.)

Plaintiff appears to believe that Davis's concession that some beard trimmers remained at large supports the conclusion that seizure of Plaintiff's beard trimmer violated his equal protection rights. The court reads that testimony, instead, as a nod to reality: Davis could not be sure that the collection effort was 100% successful. Nothing about that testimony suggests Plaintiff was singled out for adverse treatment. There is no basis for a "class of one" equal protection challenge here.

Finally, the graphic calculator: For a brief period of time, a graphic calculator appeared on the list of items for purchase at the prison commissary. (Pl.'s 56.1 [197] ¶¶ 1, 4, 20.) Plaintiff made several written requests to purchase the graphic calculator. (*Id.* ¶¶ 2, 5, 8, 20.) On October 30, 2003, Plaintiff filed a grievance about his inability to purchase one; although a counselor initially told him the calculator was not yet available, a grievance officer explained a few days later that the item would not be sold to inmates at all because it had "computer hookup availability." (Grievance Resp., Ex. L to Defs.' 56.1.) In support of his own motion for summary judgment on the claim, Plaintiff presents evidence from which he infers that Warden Briley knew or should have know about his grievance. (*Id.* ¶¶ 17-19, 22-27, 43-46.) He also notes the presence of computers in prison classrooms, an apparent challenge to the merits of the no-graphic calculator policy. (*Id.* ¶ 50.) He presents no evidence that any other inmate was permitted to purchase a graphic calculator, however. In short, Plaintiff has no valid challenge to this policy, nor any evidence apart from his own supposition that any other inmate was treated more favorably.

All of his "class of one" equal protection claims are dismissed.

## III.     Remaining Motions

A handful of other motions remain pending. First, Plaintiff has moved for an order of compliance with an earlier discovery order; as explained in correspondence from Defendants' counsel, however, Plaintiff has demonstrated that he has access to the materials he has requested. The motion for an order of compliance (199) is therefore denied.

Plaintiff also seeks reconsideration of the court's earlier ruling denying him leave to file a pro se amended complaint. Because any claims arising out of the same transactions and occurrences at issue would be time-barred, his motion for reconsideration of that ruling (205) is denied.

Plaintiff has asked for an extension of time in which to respond to Defendants' motion for reconsideration of the court's damages ruling. That motion (209) is granted, and Plaintiff is directed to respond to the motion for reconsideration on or before October 31, 2008. As Plaintiff will, thus, have had five months in which to respond to that motion, and has otherwise demonstrated his ability to represent himself effectively, his motion for appointment of counsel (210) is denied.

## **CONCLUSION**

For the reasons explained here, Defendants' motion for summary judgment (150) is granted and Plaintiff's motion for summary judgment (198) is denied. All claims against Defendant Davis are dismissed, and the only remaining claims are the First Amendment and RLUIPA claims against Defendants Briley and Peterson. Defendants' motion to strike (191) is stricken as moot. Plaintiff's motion for substitution of judge (193) is denied.

Finally, in their motion for reconsideration, Defendants argue that the Seventh Circuit's recent decision in *Koger v. Bryan,* 523 F.3d 789 (7th Cir. 2008) precludes any award beyond nominal damages in this case. The court invites Defendants, should they prevail on that motion, to confess judgment in Plaintiff's favor.

11

ENTER:

Dated: September 29, 2008

_____
REBECCA R. PALLMEYER
United States District Judge